No. 25-2609

# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

LUCIANO BARRAGAN, individually and as a representative of a class of participants and beneficiaries on behalf of the Honeywell 401(k) Plan,

*Plaintiff-Appellant,*

v.

HONEYWELL INTERNATIONAL INC.,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of New Jersey
No. 2:24-cv-04529-EP-JRA
Hon. Evelyn Padin

## APPELLANT'S OPENING BRIEF

Matthew B. Hayes (SBN 220639)
mhayes@helpcounsel.com
Kye D. Pawlenko (SBN 221475)
kpawlenko@helpcounsel.com
HAYES PAWLENKO LLP
1414 Fair Oaks Avenue, Ste. 2B
South Pasadena, CA 91030
Tel.: 626.808.4357
*Attorneys for Appellant*
*Luciano Barragan*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION...................................................................................1

STATEMENT OF JURISDICTION......................................................3

STATEMENT OF ISSUES PRESENTED FOR REVIEW....................3

STATEMENT OF RELATED CASES AND PROCEEDINGS...............4

STATEMENT OF FACTS.....................................................................4

STATEMENT OF THE CASE...............................................................8

SUMMARY OF ARGUMENT.............................................................11

ARGUMENT.......................................................................................13

I. Plaintiff has Stated Facially Plausible Claims for Breach of
   Fiduciary Duties.............................................................................13

    A. Reallocating forfeitures was a fiduciary function....................14

    B. Honeywell breached its fiduciary duties...................................17

        1. Honeywell failed to act loyally.........................................18

        2. Honeywell failed to act prudently.....................................23

II. The District Court Erred in Dismissing Plaintiff's Breach of
    Fiduciary Duty Claims ..................................................................26

    A. The district court applied the wrong legal standard...............26

    B. The district court misconstrued the Plan document.................29

C. The district court misunderstood a fiduciary's duties…..…….…..31

III. The District Court Erred in Dismissing Plaintiff's Self-Dealing
Claim…………………………………………………………….….…33

A. Section 406(b)(1) is not limited to Plan transactions…..……….34

B. Honeywell transacted with the Plan……….……………………42

CONCLUSION……………………………………………………….44

CERTIFICATE OF BAR MEMBERSHIP………………………….45

CERTIFICATE OF COMPLIANCE…………………………….…...46

CERTIFICATE OF SERVICE……………………………………47

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Alexander v. Primerica Holdings, Inc.,*
    967 F.2d 90 (3d Cir. 1992)……………………………………………..29

*BedRoc Ltd., LLC v. United States,*
    541 U.S. 176, 183 (2004)……………………………………………….34

*Bd. of Trs. of Bricklayers & Allied Craftsmen Loc. 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.,*
    237 F.3d 270 (3d Cir. 2001)………………………………………….15, 16

*Bd. of Trs. of IBT Loc. 863 Pension Fund v. C & S Wholesale Grocers, Inc.,*
    802 F.3d 534 (3d Cir. 2015)………………………………………….34

*Brotherston v. Putnam Invs., LLC,*
    907 F.3d 17 (1st Cir. 2018)…………………………………………..18

*Buescher v. N. Am. Lighting, Inc.,*
    2025 WL 1927503 (C.D. Ill. June 30, 2025)………………...22, 25-26

*Burke v. Pitney Bowes, Inc. Long-Term Disability Plan,*
    544 F.3d 1016 (9th Cir. 2008)………………………………………24

*Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.,*
    472 U.S. 559 (1985)………………………………………………….43

*City & Cnty. of San Francisco v. EPA,*
    145 S. Ct. 704 (2025)…………………………………………………36

*Clark v. Coupe,*
    55 F.4th 167 (3d Cir. 2022)…………………………………………13

*Cline v. Indus. Maint. Eng'g & Cont. Co.,*
    200 F.3d 1223 (9th Cir. 2000)………………………………………15

*Collins v. Pension & Ins. Comm. of S. Cal. Rock Products & Ready Mixed Concrete Ass'ns*, 144 F.3d 1279 (9th Cir. 1998)...................32-33

*Conrad v. The Wachovia Grp. Long Term Disability Plan*,
462 F. App'x 192 (3d Cir. 2012)..............................................24

*Donovan v. Bierwirth*,
680 F.2d 263 (2d Cir. 1982).................................................21

*Edmonson v. Lincoln Nat. Life Ins. Co.*,
725 F.3d 406 (3d Cir. 2013)..............................................16, 17

*Fifth Third Bancorp. v. Dudenhoeffer*,
573 U.S. 409 (2014)...............................................17, 27, 33

*Friend v. Sanwa Bank Cal.*,
35 F.3d 466 (9th Cir. 1994)..................................................39

*Graden v. Conexant Sys. Inc.*,
496 F.3d 291 (3d Cir. 2007)..................................................32

*Guyan Int'l, Inc. v. Prof'l Benefits Adm'rs, Inc.*,
689 F.3d 793 (6th Cir. 2012)...............................................39-40

*Hickey v. Univ. of Pittsburgh*,
81 F.4th 301 (3d Cir. 2023).................................................13

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999).........................................................31

*In re Halpin*,
566 F.3d 286 (2d Cir. 2009).................................................15

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
589 U.S. 178, 184 (2020)...............................................34-35, 40

*John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*,
510 U.S. 86 (1993)..........................................................15

*Johnson v. City of Shelby*,
      574 U.S. 10 (2014)……………………………………………………26

*Kalu v. Spaulding*,
      113 F.4th 311 (3d Cir. 2024)…………………………………………..26

*Leigh v. Engle,*
      727 F.2d 113 (7th Cir. 1984)………………………………….21, 23, 39

*Lockheed Corp. v. Spink,*
      517 U.S. 882 (1996)…………………………………….29, 41, 42

*Lowen v. Tower Asset Mgmt., Inc.,*
      829 F.2d 1209 (2d Cir. 1987)…………………………………………..39

*Mammana v. Fed. Bureau of Prisons,*
      934 F.3d 368 (3d Cir. 2019)……………………………………………13

*Mator v. Wesco Distrib., Inc.,*
      102 F.4th 172 (3d Cir. 2024)…………………………………13, 42

*McMahon v. McDowell,*
      794 F.2d 100 (3d Cir. 1986)……………………………………18, 21, 23

*McMaken v. GreatBanc Tr. Co.,*
      2019 WL 1468157 (N.D. Ill. Apr. 3, 2019)……………………35-36

*McManus v. Clorox Co.,*
      2025 WL 732087 (N.D. Cal. Mar. 3, 2025)……………..22, 29, 30-31

*Naylor v. BAE Sys., Inc.,*
      2024 WL 4112322 (E.D. Va. Sept. 5, 2024)…………………………..6

*Ne. Dep't ILGWU Health & Welfare Fund v. Teamsters Loc. Union No. 229 Welfare Fund,*
      764 F.2d 147 (3d Cir. 1985)……………………………1-2, 18, 28, 30

*Patelco Credit Union v. Sahni*,
  262 F.3d 897 (9th Cir. 2001)……………………………………………40

*Pegram v. Herdrich*,
  530 U.S. 211 (2000)……………………………………………1, 28, 30

*Perez-Cruet v. Qualcomm Inc.*,
  2024 WL 2702207 (S.D. Cal. May 24, 2024)……………..……………22

*Post v. Hartford Ins. Co.*,
  501 F.3d 154 (3d Cir. 2007)……………………………………………..24

*Ratzlaf v. United States*,
  510 U.S. 135 (1994)…………………………………………………..37

*Reich v. Compton*,
  57 F.3d 270 (3d Cir. 1995)………………………………...............38-39

*Renfro v. Unisys Corp.*,
  671 F.3d 314 (3d Cir. 2011)…………………………………………14

*Rimini St., Inc. v. Oracle USA, Inc.*,
  586 U.S. 334 (2019)……………………………………………………38

*Rodriguez v. Intuit Inc.*,
  744 F. Supp. 3d 935 (N.D. Cal. 2024)……………………………22, 26

*Russello v. United States*,
  464 U.S. 16 (1983)……………………………………………………37

*Shalom Pentecostal Church v. Acting Sec'y U.S. Dep't of Homeland Sec.*,
  783 F.3d 156 (3d Cir. 2015)……………………………………………37

*Sprague v. Cent. States, Se. & Sw. Areas Pension Fund*,
  269 F.3d 811 (7th Cir. 2001)……………………………………...43, 44

*Struble v. N.J. Brewery Employees' Welfare Tr. Fund*,
  732 F.2d 325 (3d Cir. 1984)……….………………………..….18-20, 21

*Sweda v. Univ. of Pa.*,
     923 F.3d 320 (3d Cir. 2019)…………………………………………………17

*Thole v. U.S. Bank N.A.*,
     590 U.S. 538 (2020)………………………………..…………..31-32

*Walling v. Brady*,
     125 F.3d 114 (3d Cir. 1997)…………………………………………16

*Walsh v. Allen*,
     2022 WL 256312 (W.D. Ky. Jan. 26, 2022)…………………………...6

*Wright v. Oregon Metallurgical Corp.*,
     360 F.3d 1090 (9th Cir. 2004)……………………………………42

**Statutes**

28 U.S.C. § 1291………………………………………………………….3

28 U.S.C. § 1331………………………………………………………….3

29 U.S.C. § 1002………………………………………………..14, 16

29 U.S.C. § 1103………………………………………………….....15

29 U.S.C. § 1104………………………………………………....17, 33

29 U.S.C. § 1106……………………………………........33-37, 41, 42

## INTRODUCTION

This case concerns the reallocation of assets in a 401(k) plan after they are forfeited. "Forfeitures" arise when plan participants separate from service before fully vesting in the contributions allocated to their individual accounts. When that occurs, participants forfeit their right to the unvested contributions and these plan assets must be reallocated toward another use. The question here is whether the fiduciary entrusted with reallocating forfeitures must endeavor to choose the use that best serves the remaining participants' interests or instead may choose the use that best serves its own self-interest.

The answer is obvious. When a plan document entrusts the fiduciary administering the plan with discretion to choose from a menu of permissible options for using plan assets, the fiduciary duties at the core of the Employee Retirement Income Security Act ("ERISA") require the fiduciary to put aside its own self-interest and try to choose the option that is in the participants' best interests. *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000) ("[T]he fiduciary standard" requires "'an eye single' toward beneficiaries' interests") (citation omitted); *Ne. Dep't ILGWU Health & Welfare Fund v. Teamsters Loc. Union No. 229*

*Welfare Fund*, 764 F.2d 147, 162 (3d Cir. 1985) ("*ILGWU*") (ERISA fiduciaries must "administer[ ] a plan in the best interests of its participants and beneficiaries").

Here, the plan document entrusts Honeywell, as plan administrator, with discretion to choose whether to use forfeitures to defray administrative expenses of the plan otherwise paid by participants, or reduce the contributions Honeywell is obligated to pay the plan. Plaintiff alleges that Honeywell breached its fiduciary duties and engaged in prohibited self-dealing when, year after year, it reflexively chose to use all forfeitures to reduce its own contributions.

The district court disagreed and dismissed Plaintiff's claims. While the district court agreed that Honeywell was acting in a fiduciary capacity when deciding between the plan's options for reallocating forfeitures, the court disagreed with Plaintiff's legal theory that "when a fiduciary has the discretion to allocate forfeitures, ERISA requires it to choose the 'best' option for Plan participants." Appx9. The district court dismissed Plaintiff's self-dealing claim because the court believed that Honeywell's chosen use of forfeitures to reduce its own contributions was not an "unlawful transaction" prohibited by ERISA. Appx12-13.

2

As established below, Plaintiff has alleged plausible claims for breach of fiduciary duties and self-dealing. Accordingly, the district court's order dismissing those claims should be reversed and this case should be remanded for further proceedings.

## STATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. § 1331. On August 18, 2025, the district court dismissed Plaintiff's complaint with prejudice. Appx3. Plaintiff timely appealed on August 19, 2025. Appx1-2. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the district court erred in dismissing Plaintiff's breach of fiduciary duty claims where, under the particular facts and circumstances alleged here, acting in the participants' best interests required Honeywell to choose to use forfeitures to defray the plan's administrative expenses as permitted by the plan rather than reduce its own contributions.

2. Whether the district court erred in dismissing Plaintiff's self-dealing claim for lack of a transaction where the statute does not by its terms require a transaction and where Plaintiff alleged that Honeywell

used plan assets as a credit toward its obligation to make matching contributions to the plan.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously. Plaintiff is aware of three pending appellate cases raising the same issues as this case: (1) *Hutchins v. HP Inc.*, No. 25-826 (9th Cir. NOA filed 2/6/25); (2) *Cain v. Siemens Corp.*, No. 25-2564 (3d Cir. NOA filed 8/11/25); and (3) *Dimou v. Thermo Fisher Scientific Inc.*, No. 25-6364 (9th Cir. NOA filed 10/7/25). Plaintiff is also aware that the same or similar issues have been addressed by numerous district courts.

## STATEMENT OF FACTS

Plaintiff Luciano Barragan is a former participant in the Honeywell 401(k) Plan ("Plan") whose account has been charged with a share of the Plan's administrative expenses. Appx64 (FAC ¶ 9). The Plan is a defined contribution individual account plan sponsored by defendant Honeywell International Inc. ("Honeywell" or "the Company"). Appx63 (FAC ¶¶ 6, 7). In addition to sponsoring the Plan, Honeywell also manages and administers the Plan through its Vice President - Human Resources, Compensation and Benefits, who is the

"Plan Administrator." Appx63 (FAC ¶ 7); Appx107 (Plan § 2.58); Appx121 (Plan § 14.1).

The Plan obligates Honeywell, in its capacity as Plan sponsor, to "make Employer Matching Contributions" to the Plan in accordance with the Plan's terms. Appx56 (Plan § 5.1); Appx138 (Plan § 2.13); Appx140 (Plan §§ 2.25 & 2.27). Unless an exception applies, participants do not fully vest in the employer contributions allocated to their individual accounts until they have completed three years of service. Appx65 (FAC ¶ 16); Appx159 (Plan § 7.2). Participants who separate from service before fully vesting in the employer contributions allocated to their accounts forfeit their right to the unvested contributions. Appx65-66 (FAC ¶ 17); Appx119 (Plan § 7.3).

When employer contributions are forfeited, they must be reallocated to another permissible use. The Plan provides:

> Forfeited amounts may be applied to reduce subsequent Employer Matching Contributions, Discretionary Supplemental Employer Contributions, Qualified Nonelective Contributions, or Qualified Matching Contributions provided for under the Plan, to defray administrative expenses of the Plan, to correct errors made in allocating amounts to Participants' Accounts, to restore Participants' Accounts in accordance with this Section, or for any other purpose permitted under IRS rules.

Appx119-120 (Plan § 7.3). The Plan entrusts Honeywell, acting by and through its Vice President - Human Resources, Compensation and Benefits, with discretion to choose between these permissible uses. Appx107 (Plan § 2.58); Appx121 (Plan §§ 14.1 & 14.2). Unlike other plans,[1] the Plan does not specify which use should take priority.

Absent using forfeitures to defray administrative expenses as permitted by the Plan, "[a]ll costs and expenses of administering the Plan and managing the Funds … shall be borne by the Participants and paid from their Accounts in the Plan." Appx163 (Plan § 14.5). The deduction of these expenses from participant accounts reduces the funds available to participants for distribution and/or investing. Appx65 (FAC ¶ 15).

In deciding between the Plan's options for using forfeitures, Honeywell has a conflict of interest with the Plan's participants. Appx67 (FAC ¶ 23). On the one hand, Honeywell has a financial incentive to choose to use all forfeitures to reduce its own contributions

---

[1] *Compare Naylor v. BAE Sys., Inc.*, 2024 WL 4112322, at *6 (E.D. Va. Sept. 5, 2024) (requiring that forfeitures first be used to offset employer contributions), *with Walsh v. Allen*, 2022 WL 256312, at *3-4 (W.D. Ky. Jan. 26, 2022) (requiring that forfeitures be used to pay plan expenses).

because that option saves the Company money. Appx66-67 (FAC ¶¶ 22 & 23). On the other hand, absent a risk that Honeywell would be unable to satisfy its contribution obligations, Plan participants would be best served if forfeitures were used to defray administrative expenses. Appx66 (FAC ¶ 21). This is because that option would reduce or eliminate the amounts otherwise deducted from their individual accounts to cover such expenses. Appx66 (FAC ¶ 21).

Despite the conflict of interest presented by this decision, the Company failed to undertake any investigation into which option was in the best interests of participants. Appx67 (FAC ¶ 24). Honeywell did not, for example, investigate whether there was a risk that it would be unable to meet its contribution obligations if forfeitures were used to defray administrative expenses, or evaluate whether there were enough forfeitures to defray administrative expenses and still offset a portion of its contributions. Appx67 (FAC ¶ 25). Nor did Honeywell consult with an independent non-conflicted decisionmaker to advise it in deciding upon the best course of action for using forfeitures. Appx67 (FAC ¶ 26).

Instead, year after year, Honeywell reflexively chose to act in its own self-interest by using all forfeitures to reduce its own contributions

to the Plan. Appx68 (FAC ¶ 28). In making that choice, Honeywell was motivated by its own self-interest and failed to consider the interests of the Plan's participants. Appx68 (FAC ¶ 29). Considering that Honeywell had sufficient cash and equivalents on hand each year to satisfy its contribution obligations to the Plan, there was never any risk that the Company would have defaulted on its contribution obligations had it instead used forfeitures to defray administrative expenses. Appx68 (FAC ¶ 29).

| YEAR | CONTRIBUTIONS REDUCED BY FORFEITURES | EXPENSES DEFRAYED BY FORFEITURES | EXPENSES CHARGED TO PARTICIPANTS |
|---|---|---|---|
| 2018 | $2,400,000 | $0 | $5,000,000 |
| 2019 | $3,100,000 | $0 | $6,000,000 |
| 2020 | $4,000,000 | $0 | $2,000,000 |
| 2021 | $7,000,000 | $0 | $9,000,000 |
| 2022 | $7,000,000 | $0 | $4,000,000 |
| 2023 | $7,000,000 | $0 | $3,000,000 |

Appx68-69 (FAC ¶¶ 30-35).

## STATEMENT OF THE CASE

Plaintiff filed suit against Honeywell in February 2024 on behalf of the Plan pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2) seeking to represent a class of participants and beneficiaries of the Plan. Appx28-

43 (Compl.). Plaintiff alleged that Honeywell violated ERISA when it elected to reallocate forfeitures toward offsetting its own contributions rather than defraying administrative expenses. Appx30 (Compl. ¶¶ 15-30). Plaintiff brought five causes of action: (1) breach of ERISA's duty of loyalty in violation of 29 U.S.C. § 1104(a)(1)(A); (2) breach of ERISA's duty of prudence in violation of 29 U.S.C. § 1104(a)(1)(B); (3) inurement in violation of 29 U.S.C. § 1103(c)(1); (4) prohibited transactions in violation of 29 U.S.C. § 1106(a)(1); and (5) self-dealing in violation of 29 U.S.C. § 1106(b)(1). Appx36-42 (Compl. ¶¶ 29-57). HP moved to dismiss the original complaint.

On December 19, 2024, the district court dismissed all claims with leave to amend. Appx14. As relevant to this appeal,[2] the district court found that Honeywell "acted as a fiduciary" when it determined how to reallocate forfeitures (Appx20) but did not breach its fiduciary duties because Plaintiff's "broad theory would require any fiduciary to use forfeited amounts to pay administrative costs regardless of any such context or circumstances." Appx23 (citation omitted). Regarding

---

[2] Plaintiff only seeks review of the district court's dismissal of his claims for breach of fiduciary duties and self-dealing.

Plaintiff's self-dealing claim, the district court found that "[t]he Complaint fails to plausibly allege a prohibited transaction" because "the allegations demonstrate that the forfeited amounts remain as Plan assets and are reallocated to other Plan participants." Appx26-27.

Plaintiff filed an amended complaint in January 2025. Appx61-79 (FAC). As before, Plaintiff challenged Honeywell's use of forfeitures to reduce its own contributions instead of defray Plan expenses. Appx68-70 (FAC ¶¶ 27-36). However, this time Plaintiff only alleged causes of action for breach of fiduciary duties and self-dealing. Appx73-78 (FAC ¶¶ 42-60). Honeywell moved to dismiss the amended complaint.

On August 18, 2025, the district court dismissed the amended complaint without leave to amend. Appx3. The district court disagreed with Plaintiff's legal theory that "when a fiduciary has the discretion to allocate forfeitures, ERISA requires it to choose the 'best' option for Plan participants." Appx9. The district court believed that "[s]uch a theory would result in an override of § 14.5 of the Plan, mandating that administrative costs are to be borne by Plan participants." Appx10. The district court dismissed Plaintiff's self-dealing claim because he "failed to allege a transaction between the Plan and another party." Appx12.

## SUMMARY OF ARGUMENT

Fiduciaries must act in the best interests of plan participants. Plaintiff plausibly alleges that Honeywell violated this command when, over a period of many years, it opted to use all forfeitures to reduce its own contributions rather than defray any administrative expenses as permitted by the Plan. The district court erred in concluding otherwise.

The district court found Plaintiff's breach of fiduciary duty claims implausible because using forfeitures to reduce employer contributions "could *never* be the appropriate selection." But it was not Plaintiff's burden to show that using forfeitures to reduce employer contributions could sometimes be the appropriate selection. All Plaintiff needed to do was plead enough facts to support a reasonable inference that, in *these* circumstances, using forfeitures to reduce employer contributions was not in the best interests of the Plan's participants.

The district court believed that requiring forfeitures to be used in the participants' best interests would "result in an override" of the Plan provision "mandating that administrative costs are to be borne by Plan participants." But, when construed as a whole, the Plan provides that only costs not defrayed by forfeitures must be borne by participants.

11

The district court noted that Plaintiff had not alleged that "Honeywell failed to abide by the Plan or that any participant received less than promised." However, participants in a defined contribution plan are entitled to the value of their accounts unencumbered by any fiduciary impropriety. It is undisputed that if Honeywell had chosen to use forfeitures in the participants' best interests as ERISA requires, the value of their accounts would have been greater.

The district court concluded that Honeywell was not obligated to choose to use forfeitures in the participants' best interests because a fiduciary's duty to "maximize pecuniary benefits" is not "exclusive" of its duty to comply with the terms of the plan. But that principle has no application where, as here, the Plan expressly authorizes using forfeitures to pay administrative expenses.

In addition to having to act in the best interests of participants, fiduciaries cannot "deal with" assets of a plan in their own interest. The district court erred in dismissing Plaintiff's self-dealing claim for lack of a transaction both because the statute does not by its terms require a transaction and because Plaintiff adequately alleged an extension of credit transaction between Honeywell and the Plan.

12

## ARGUMENT

The district court's order granting the Company's motion to dismiss is reviewed de novo. *Hickey v. Univ. of Pittsburgh*, 81 F.4th 301, 308 (3d Cir. 2023). "[A] claim should survive a motion to dismiss if it contains sufficient factual allegations that, if accepted as true, state a claim of relief that is plausible on its face." *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (citation omitted). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## I.   PLAINTIFF HAS STATED FACIALLY PLAUSIBLE CLAIMS FOR BREACH OF FIDUCIARY DUTIES.

"The elements of an ERISA breach of fiduciary duty claim are: (1) a plan fiduciary, (2) breached an ERISA-imposed duty, (3) causing a loss to the plan." *Mator v. Wesco Distrib., Inc.*, 102 F.4th 172, 184 (3d Cir. 2024) (quoting *Sweda v. Univ. of Pa.*, 923 F.3d 320, 328 (3d Cir. 2019)). The Company's motions to dismiss only challenged the first two elements. In ruling on those motions, the district court correctly found that Honeywell was acting as a fiduciary when choosing how to

reallocate forfeitures but erred in concluding that Plaintiff had not plausibly alleged any breach of fiduciary duty.

**A. Reallocating forfeitures was a fiduciary function.**

In determining whether there has been a breach of fiduciary duty, "the threshold question" is whether the defendant "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Renfro v. Unisys Corp.*, 671 F.3d 314, 321–22 (3d Cir. 2011) (quoting *Pegram*, 530 U.S. at 226). The "action subject to complaint" here is the Company's annual decisions to use all forfeitures to reduce its own contributions rather than defray any of the Plan's administrative expenses. Appx68-70 (FAC ¶¶ 27-36). The district court correctly found that the Company's "decision[s] to [re]allocate forfeited amounts constitutes a fiduciary, not settlor, function." Appx19. This is so for two independent reasons.

First, Honeywell exercised control over the management and disposition of Plan assets. ERISA defines a plan "fiduciary" to include a person who exercises "any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). This means that any person who takes "actions in regard to the[] management and

14

disposition" of plan assets "must be judged against ERISA's fiduciary standards." *John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, 510 U.S. 86, 106 (1993). *See also Bd. of Trs. of Bricklayers & Allied Craftsmen Loc. 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 274 (3d Cir. 2001) (holding that a person "with authority or control over the management or disposition of plan 'assets'" is a fiduciary). Accordingly, if forfeitures are "plan assets," then the Company's reallocation decisions were necessarily fiduciary ones.

Forfeitures consist of employer contributions left in a plan when participants fail to vest in the contributions. Employer contributions become "plan assets" once they are paid to the plan. *See In re Halpin*, 566 F.3d 286, 290 (2d Cir. 2009); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000).[3] Because forfeitures consist of employer contributions that have already been paid to the Plan, they are assets of the Plan. Therefore, Honeywell necessarily acted as a fiduciary when it exercised control over their management and disposition. *See Wettlin*, 237 F.3d at 275 (ERISA

---

[3] *See also* 29 U.S.C. § 1103(c)(1) & (2) (providing that paid employer contributions are "assets of a plan" that cannot be returned to the employer except in certain limited circumstances).

"directs that fiduciary status be assigned to the extent that a person 'exercises any authority or control respecting management or disposition of [plan] assets.'") (quoting 29 U.S.C. § 1002(21)(A)(i)).

Second, Honeywell exercised discretionary authority and responsibility in administering the Plan's forfeitures provision. ERISA's definition of a plan "fiduciary" also includes a person who exercises "any discretionary authority or discretionary responsibility in its administration." 29 U.S.C. § 1002(21)(A)(iii). "'Discretion' for the purpose of determining the applicability of fiduciary obligations means solely that the plan administrator is making a choice reserved to it by the plan document in administering the plan, not tinkering with the plan document itself." *Walling v. Brady*, 125 F.3d 114, 119–20 (3d Cir. 1997). "Accordingly, when a plan or policy requires the performance of an act of plan management or administration in a specific manner, then ERISA's fiduciary duties are not implicated." *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 422 (3d Cir. 2013). "But when the plan or policy permits some leeway in how an act is performed, then the discretionary choice on how to perform that act is cabined by ERISA's fiduciary duties." *Id.*

16

Here, the Plan permits "some leeway" in how forfeitures may be reallocated. Section 7.3 of the Plan provides for a menu of options to choose from. Among the options on the menu, forfeitures "may be applied to reduce subsequent" employer contributions to the Plan or "to defray administrative expenses of the Plan[.]" Appx119-120 (Plan § 7.3). Honeywell acted as a fiduciary because while administering Section 7.3, it exercised discretionary authority and responsibility when it chose to use all forfeitures to reduce its own contributions rather than pay any of the Plan's administrative expenses. *See Edmonson*, 725 F.3d at 422 (holding that having a "choice" in how to administer a plan "is the definition of discretion" sufficient to trigger fiduciary status).

**B. Honeywell breached its fiduciary duties.**

ERISA "impose[s] a fiduciary standard that is considered the highest known to the law." *Sweda*, 923 F.3d at 333 (citation omitted). The duty of loyalty requires fiduciaries to act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), while the duty of prudence "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Fifth Third Bancorp. v. Dudenhoeffer*, 573 U.S. 409, 419 (2014). These

17

duties require fiduciaries to "administer[ ] a plan in the best interests of its participants and beneficiaries." *ILGWU*, 764 F.2d at 162.

### 1. Honeywell failed to act loyally.

The duty of loyalty requires fiduciaries to act with "complete and undivided loyalty to the beneficiaries." *Struble v. N.J. Brewery Employees' Welfare Tr. Fund*, 732 F.2d 325, 334 (3d Cir. 1984), *disapproved on other grounds by Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). "This standard, based upon the common-law conception of a trustee, is quite rigorous." *McMahon v. McDowell*, 794 F.2d 100, 110 (3d Cir. 1986). "It requires" fiduciaries "to exclude all selfish interest and all consideration of the interests of third persons." *Id.* (citation omitted). "[T]o be loyal is to possess a certain state of mind, one unswerving in allegiance." *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 40 (1st Cir. 2018) (citation omitted). Accordingly, whether a fiduciary has acted loyally depends on the fiduciary's subjective "motivation" for its actions. *Id.*

For example, in *Struble*, multiple employers agreed to make a fixed level of contributions to an ERISA-covered welfare plan jointly administered by employer and union trustees. 732 F.2d at 328-29.

18

When it became apparent that the level of employer contributions to the plan "would buy more employee and retiree benefits than promised," a dispute arose about what to do with the excess employer contributions in the plan. *Id.* at 329. The employer trustees voted to use the surplus to reduce the employers' future contributions to the plan. *Id.*

A group of plan participants sued the employer trustees alleging that they breached their fiduciary duties when they voted to use the surplus employer contributions in the plan to offset future employer contributions. *Id.* at 331, 334. The district court granted summary judgment to the employer trustees. *Id.* at 331.

This Court reversed the district court. *Id.* at 335. The dispositive question, as framed by this Court, was whether the employer trustees "acted with the requisite prudence and with complete and undivided loyalty to the beneficiaries" in voting to apply the surplus as a credit toward future employer contributions. *Id.* at 334.

In attempting to answer that question, this Court recited an inexhaustive "list of considerations" including, "for example," whether the employer trustees "voted as they did on the instructions of the [e]mployers; whether they took time to investigate the merits of

alternative courses of conduct; and whether they consulted with others, for example, their attorneys." *Id.* at 335. Because the record contained "almost no evidence revealing what factors the [e]mployer [t]rustees considered in deciding to vote to credit the [e]mployers with the surplus," this Court reversed summary judgment for the employer trustees and remanded to the district court for further factfinding as to the reason(s) why the employer trustees voted the way they did. *Id.*

This case is strikingly similar to *Struble*. Here, as in *Struble*, Plaintiff claims that the fiduciary decision to use Plan assets to offset future employer contributions was made "to promote the [Company's] interests rather than the [participants'] interests." *Id.* at 334.

Thus, Plaintiff alleges that instead of choosing to use forfeitures to defray the Plan's administrative expenses as permitted by the Plan, year after year Honeywell consistently "chose to use all these Plan assets for the purpose of reducing its own contributions to the Plan, thereby saving the Company millions of dollars at the expense of the Plan which received decreased Company contributions and its participants and beneficiaries who were forced to incur avoidable expense deductions." Appx73 (FAC ¶ 45). Plaintiff further alleges that

20

"[i]n making this decision," Honeywell was "motivated" by its "own self-interest" and "failed to consider" the "interest[s] of the Plan's participants and beneficiaries." Appx74 (FAC ¶ 46). These allegations plausibly show that Honeywell failed to act with "complete and undivided loyalty to the beneficiaries." *Struble*, 732 F.2d at 334.

The duty of loyalty is breached when "plan fiduciaries have not acted for the sole benefit of plan participants and beneficiaries." *McMahon*, 794 F.2d at 109. "Although officers of a corporation who are trustees of its pension plan do not violate their duties as trustees by taking action which, after careful and impartial investigation, they reasonably conclude best to promote the interests of participants and beneficiaries simply because it incidentally benefits the corporation or, indeed, themselves, their decisions must be made with an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982). "[T]he consistent management of plan assets in congruence with the fiduciaries' personal interests over a substantial period of time ... may be probative of whether the fiduciaries have acted solely in the interests of the beneficiaries." *Leigh v. Engle,* 727 F.2d 113, 127 (7th Cir. 1984).

21

Accordingly, Plaintiff has plausibly alleged that Honeywell "was not acting 'solely in the interest of the participants and beneficiaries' when it elected to use forfeitures to offset … employer contributions, thus providing a benefit to [Honeywell] while ensuring that Plan participants would be responsible for administrative costs." *Buescher v. N. Am. Lighting, Inc.*, -- F.Supp.3d --, 2025 WL 1927503, at *12 (C.D. Ill. June 30, 2025). *See also McManus v. Clorox Co.*, 2025 WL 732087, at *4 (N.D. Cal. Mar. 3, 2025) ("Plaintiff's argument that defendants were motivated solely by self-interest … is plausible given that no other explanation is readily apparent"); *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 943 (N.D. Cal. 2024) ("The complaint plausibly alleges that Intuit acted in contravention of ERISA's mandate to provide benefits solely in the interest of participants and beneficiaries when it chose to use forfeitures to reduce its own contributions"); *Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207, at *2 (S.D. Cal. May 24, 2024) ("Plaintiff plausibly claims that the Defendants breached their fiduciary duty to Plan participants by making a choice that put the employer's interests above the interests of the Plan participants.").

### 2. Honeywell failed to act prudently.

In administering a plan, "the fiduciary must act 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" *McMahon*, 794 F.2d at 110 (quoting 29 U.S.C. § 1104(a)(1)(B)). The duty of prudence obligates fiduciaries "to avoid placing themselves in a position where their acts as directors or officers of the corporation will prevent their functioning with the complete loyalty to participants demanded of them as trustees." *Id.* (citation omitted). "This duty may, in some circumstances, require the fiduciary to step aside in favor of a neutral referee, or at the least, to conduct an explicit inquiry into the potential for a conflict of interest." *Id.*

Where the fiduciary has a conflict of interest, the duty of prudence is breached "by failing to investigate alternative courses of action or to seek the guidance of a neutral third party." *Id. See also Leigh,* 727 F.2d at 127-29 (finding that plan administrators "violated ERISA's fiduciary requirements" because they faced "clearly conflicting loyalties," but "undertook no genuinely independent investigation" of their "options"

and "continued to exercise control over the plan assets in ways that directly benefited" themselves). "[A] structural conflict arises when the administrator has a non-trivial financial incentive to act against the interests of the beneficiaries." *Post v. Hartford Ins. Co.*, 501 F.3d 154, 162 (3d Cir. 2007), *overruled on other grounds by Estate of Schwing v. Lilly Health Plan*, 562 F.3d 522 (3d Cir. 2009).

Here, Honeywell has a "structural conflict of interest" because of its "dueling roles as administrator of the [P]lan and the entity funding the [P]lan." *Conrad v. The Wachovia Grp. Long Term Disability Plan*, 462 F. App'x 192, 194 (3d Cir. 2012). In administering Section 7.3 of the Plan, Honeywell must decide whether to use forfeitures to pay Plan administrative expenses otherwise borne by participants or reduce its own contributions to the Plan. Appx119-120 (Plan § 7.3). Thus, Honeywell has a financial incentive to choose to use all forfeitures to reduce its own contributions because every forfeiture "dollar" used to offset employer contributions "is a dollar that will not need to be contributed to fund the trust." *Burke v. Pitney Bowes, Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1026 (9th Cir. 2008).

24

Notwithstanding this conflict of interest, Plaintiff alleges that Honeywell "failed to undertake any reasoned and impartial decision-making process to determine that using the forfeitures in the Plan to reduce the Company's own contribution expenses … was in the best interest[s] of the participants or was prudent, and failed to consider whether participants would be better served by another use of these Plan assets after considering all relevant factors." Appx75 (FAC ¶ 52). Honeywell "did not, for example, investigate whether there was a risk that [it] would be unable to meet its contribution obligations" if forfeitures were used to pay administrative expenses, "or evaluate whether there were sufficient forfeitures to defray" administrative expenses "and still offset a portion of [its] contribution obligations." Appx67 (FAC ¶ 25). Nor did Honeywell "consult with an independent nonconflicted decisionmaker to advise [it] in deciding upon the best course of action for [re]allocating forfeitures." Appx67 (FAC ¶ 26).

These allegations plausibly show that Honeywell acted imprudently in administering the Plan's forfeitures provision. *See Buescher*, 2025 WL 1927503, at *14 (C.D. Ill. June 30, 2025) ("While the Administrative Committee unquestionably complied with the Plan in

25

that it selected one of the two options for allocations of forfeitures, it was no less obligated to apply a prudent man standard of care in making that choice"); *Rodriguez*, 744 F. Supp. 3d at 943 (Plaintiff "stated a plausible claim for breach of the duty of prudence" by alleging "that a prudent employer in this particular context would have at minimum engaged in a 'reasoned and impartial decision-making process' considering 'all relevant factors' before determining how to use the forfeited funds in the best interest[s] of the participants and beneficiaries").

## II.   THE DISTRICT COURT ERRED IN DISMISSING PLANTIFF'S BREACH OF FIDUCIARY DUTY CLAIMS.

### A. The district court applied the wrong legal standard.

To survive a motion to dismiss, a plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). "A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

26

Instead of asking whether it is reasonable to infer from Plaintiff's factual allegations that Honeywell failed to act loyally and prudently when it chose to use forfeitures to reduce its own contributions in these circumstances, the district court hypothesized that under Plaintiff's theory using forfeitures to reduce employer contributions "could *never* be the appropriate selection." Appx10 (emphasis in original). The district court erred by straying from Plaintiff's factual allegations and focusing instead on whether Plaintiff's "theory was too broad in reach.'" Appx10. *See Fifth Third*, 573 U.S. at 425 ("[T]he appropriate inquiry" when evaluating the plausibility of an ERISA fiduciary duty claim "will necessarily be context specific"). The district court never explained how, under the facts and circumstances alleged here, using forfeitures to reduce the Company's contributions was loyal and prudent.

Under the district court's reasoning, Plaintiff's claims could only be plausible in this specific context if he could point to some hypothetical instance where Honeywell could lawfully choose to use forfeitures to reduce employer contributions. But that is not Plaintiff's burden. Plaintiff need not conjure up a scenario in which Honeywell could lawfully do what it did. Plaintiff need only plead enough facts to

27

support a reasonable inference that Honeywell breached its fiduciary duties when, in these particular circumstances, it opted to use forfeitures to reduce its own contributions rather than defray expenses. The district court lost sight of the facts alleged here, and applied the wrong legal standard, when it found Plaintiff's claims implausible because using forfeitures to reduce employer contributions "could *never* be the appropriate selection." Appx10 (emphasis in original).

Not only did the district court ask the wrong question, but it also reached the wrong answer. The "theory" that the district court found to be "too broad in reach" (Appx10) is simply that, when given a choice among a menu of options for reallocating plan assets, a fiduciary must endeavor to choose the option that is best for participants. *Pegram*, 530 U.S. at 235 (fiduciaries must act with "'an eye single' toward beneficiaries' interests") (citation omitted); *ILGWU*, 764 F.2d at 162 (fiduciaries must "administer[ ] a plan in the best interests of its participants and beneficiaries"). To the extent that would "never" permit forfeitures to be used to reduce employer contributions, it is only because, among the available options for how forfeitures may be used, that one is never best for participants. That is a function of a plan's

design, not Plaintiff's theory. There is nothing implausible about that outcome where, as here, "the Plan is set up in a way that allows a fiduciary to decide who saves money"—Honeywell or the Plan's participants. *McManus*, 2025 WL 732087, at *4 n.6. Because the Plan is designed this way, ERISA requires "that the fiduciary decide in favor of those it owes duties."[4] *Id.*

### B. The district court misconstrued the Plan document.

The district court reasoned that requiring Honeywell to choose to use forfeitures in the best interests of participants "would result in an override of § 14.5 of the Plan, mandating that administrative costs are to be borne by Plan participants." Appx10. But section 14.5 of the Plan must be construed together with section 7.3 of the Plan, which expressly authorizes using forfeitures "to defray administrative expenses of the Plan." Appx119-120 (Plan § 7.3). *See Alexander v. Primerica Holdings, Inc.*, 967 F.2d 90, 93 (3d Cir. 1992) ("ERISA plans, like contracts, are to be construed as a whole").

---

[4] If Honeywell does not like this result, it is free to redesign the Plan. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996).

When sections 14.5 and 7.3 are construed together, they provide that absent using forfeitures "to defray administrative expenses of the Plan" as permitted by section 7.3, "[a]ll costs and expenses of administering the Plan and managing the Funds … shall be borne by the Participants and paid from their Accounts in the Plan" as required by section 14.5. Appx119-120 (Plan § 7.3); Appx163 (Plan § 14.5). Accordingly, contrary to the district court's conclusion, requiring Honeywell to choose to use forfeitures in the best interests of participants would not result in an "override" of section 14.5.

The district court also erred in finding that Plaintiff is seeking "an additional benefit" not provided by the Plan. Appx10 (citation omitted). The Plan makes "[f]orfeited amounts" available "to defray administrative expenses of the Plan[.]" Appx119-120 (Plan § 7.3). Plaintiff does not contend that Honeywell was required to design the Plan that way. But because the Plan does make forfeitures available "to defray administrative expenses of the Plan[,]" forfeitures must be reallocated to that use when it is in the best interests of participants to do so. *Pegram*, 530 U.S. at 235; *ILGWU*, 764 F.2d at 162. "In other words, [P]laintiff does not ask for more than what the Plan promised; he

claims that the Plan, when read in conjunction with ERISA's fiduciary duty statutes, promises a particular outcome." *McManus*, 2025 WL 732087 at *4 n.6.

Under no circumstance would using forfeitures to pay Plan expenses ever increase Honeywell's contributions above the levels that Honeywell agreed to pay the Plan. Nor would it ever require Honeywell, as opposed to the Plan's trust fund, to pay Plan administrative expenses. Thus, Plaintiff is not seeking an "additional benefit" beyond what the Plan itself provides.

**C. The district court misunderstood a fiduciary's duties.**

The district court assumed that "the fiduciary duty is fulfilled" so long as "the fiduciary ensures that participants have received their promised benefits." Appx10 (citation omitted). However, unlike defined benefit plans, defined contribution plans do not promise a specific benefit. Rather, the "employer's contribution" to the plan "is fixed" and participants are "entitled to the balance of the[ir] account[s]" within the plan "upon retirement." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999). "[T]he ultimate amount of money" participants receive at retirement thus "depend[s] on how well the trust is managed" and

31

"every penny of gain or loss is at the beneficiaries' risk." *Thole v. U.S. Bank N.A.,* 590 U.S. 538, 542 (2020).

As this Court has explained, in the context of a defined contribution plan, "part of a participant's entitlement is the value of his account unencumbered by any fiduciary impropriety." *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 297 (3d Cir. 2007). "In other words, ERISA entitles individual-account-plan participants not only to what *is* in their accounts, but also to what *should be* there given the terms of the plan and ERISA's fiduciary obligations." *Id.* (emphasis in original).

Here, everyone agrees that the participants' account balances would have been greater had Honeywell chosen to use forfeitures in the participants' best interests. Therefore, the district court erred in dismissing Plaintiff's claims because he did not allege that "Honeywell failed to abide by the Plan or that any participant received less than promised." Appx10.

The district court compounded its errors by relying on the Ninth Circuit's decision in *Collins v. Pension & Insurance Committee of Southern California Rock Products & Ready Mixed Concrete Associations*, 144 F.3d 1279 (9th Cir. 1998). Appx10. The issue there

32

was whether the administrator of an overfunded pension plan had a fiduciary duty "to amend the plan to increase benefits." *Id.* at 1282. The Ninth Circuit held that the administrator had no duty to amend the plan because the plan document did not require amendment in the event of overfunding and a fiduciary's duty to "maximize pecuniary benefits" is not "exclusive" of the duty to follow the plan's terms. *Id.*

Unlike in *Collins*, Plaintiff is not arguing that ERISA's fiduciary duties required Honeywell to amend the Plan to increase benefits. Plaintiff argues only that Honeywell should have used forfeitures to pay administrative expenses, an option expressly allowed by the Plan. Thus, there is no tension here between the duty "to maximize retirement savings for participants," *Fifth Third*, 573 U.S. at 420, and the duty to follow the Plan's terms as written, 29 U.S.C. § 1104(a)(1)(D). *Collins'* statement that the former duty is not "exclusive" of the latter duty is not implicated here because the duties are in harmony, not competition.

## III. THE DISTRICT COURT ERRED IN DISMISSING PLANTIFF'S SELF-DEALING CLAIM.

When it comes to plan assets, section 406(b)(1) of ERISA, 29 U.S.C. § 1106(b)(1), categorically prohibits all fiduciary self-dealing. It provides, without exception, that a fiduciary "shall not deal with the

33

assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1). Plaintiff alleges that Honeywell violated this prohibition by using forfeited assets in the Plan "as a substitute for" its "own contributions owing to the Plan, thereby saving" itself "millions of dollars in contribution costs." Appx77 (FAC ¶ 58). The district court dismissed Plaintiff's self-dealing claim because Plaintiff "failed to allege a transaction between the Plan and another party[.]" Appx12. The district court erred for the following reasons.

## A. Section 406(b)(1) is not limited to plan transactions.

"The preeminent canon of statutory interpretation requires" courts "to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (quoting *Conn. Nat. Bank v. Germain,* 503 U.S. 249, 253–54 (1992)). "Statutory interpretation begins with the plain language of the statute and when the language is clear, the court 'must enforce it according to its terms.'" *Bd. of Trs. of IBT Loc. 863 Pension Fund v. C & S Wholesale Grocers, Inc.*, 802 F.3d 534, 542 (3d Cir. 2015) (quoting *Jimenez v. Quarterman,* 555 U.S. 113, 118 (2009)). The Supreme Court has specifically said that courts "must

enforce plain and unambiguous statutory language in ERISA, as in any statute, according to its terms." *Intel Corp. Inv. Pol'y Comm. v. Sulyma,* 589 U.S. 178, 184 (2020).

Here, the text of section 406(b)(1) plainly and unambiguously prohibits all fiduciary self-dealing with plan assets, regardless of whether the self-dealing is accomplished through a transaction between the plan and fiduciary. Section 406(b) provides:

A fiduciary with respect to a plan shall not—

(1) *deal with* the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity *act in any transaction* involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party *dealing with such plan in connection with a transaction* involving the assets of the plan.

29 U.S.C. § 1106(b) (emphasis added).

On its face, section 406(b)(1) is a blanket prohibition on fiduciaries "deal[ing] with" plan assets in their own interests. "[T]he dictionary definition of 'deal' when used in conjunction with 'with' is broad." *McMaken v. GreatBanc Tr. Co.,* 2019 WL 1468157, at *7 (N.D. Ill. Apr.

35

3, 2019). "Specifically, it means to 'take action with regard to someone or something.'" *Id.* (quoting Merriam-Webster's Collegiate Dictionary, 11th Ed. (2003)).

When Congress wanted to limit the scope of section 406(b)'s prohibitions to a plan "transaction," it said so expressly. Thus, in section 406(b)(2), Congress prohibited fiduciaries from acting on behalf of an adverse party "in any transaction involving the plan[.]" 29 U.S.C. § 1106(b)(2). Likewise, in section 406(b)(3), Congress prohibited fiduciaries from receiving any consideration from a party dealing with the plan "in connection with a transaction involving the assets of the plan." *Id.* § 1106(b)(3). By contrast, in section 406(b)(1), Congress made it unlawful for fiduciaries to "deal with" plan assets in their own interest or for their own account and omitted the word "transaction." *Id.* § 1106(b)(1).

"'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *City & Cnty. of San Francisco v. EPA*, 145 S. Ct. 704, 713–14 (2025) (quoting *Russello v. United States*, 464

U.S. 16, 23 (1983)). "Had Congress intended to restrict" section 406(b)(1)'s prohibition on fiduciary self-dealing to transactions with the plan, "it presumably would have done so expressly as it did in" both sections 406(b)(2) and 406(b)(3). *Russello*, 464 U.S. at 23. Section 406(b) must be read "as written, giving meaning to distinctions between statutory provisions, rather than rely on implicit assumptions of intent." *Shalom Pentecostal Church v. Acting Sec'y U.S. Dep't of Homeland Sec.*, 783 F.3d 156, 166 (3d Cir. 2015) (citation omitted).

That the term "deal with" encompasses more than just plan transactions is confirmed by section 406(b)(3), which prohibits plan fiduciaries from receiving consideration from any party "*dealing with* such plan *in connection with a transaction* involving the assets of the plan."[5] 29 U.S.C. § 1106(b)(3) (emphasis added). If Congress had understood the terms "deal with" and "transact with" to be synonymous, it would have simply said that fiduciaries may not receive consideration from any party "dealing with the assets of the plan." There would have been no reason for Congress to specify that the "dealing with" must be

---

[5] "A term appearing in several places in a statutory text is generally read the same way each time it appears." *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994).

"in connection with a transaction." Construing "deal with" to mean "transact with" renders the statutory language "in connection with a transaction" redundant. "If one possible interpretation of a statute would cause some redundancy and another interpretation would avoid redundancy, that difference in the two interpretations can supply a clue as to the better interpretation of a statute." *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019).

Under the district court's erroneous interpretation of section 406(b)(1), fiduciaries *can* deal with the assets of a plan in their own interest and for their own account so long as their self-dealing is not in the form of a transaction with the plan. That interpretation cannot be correct because it conflicts with the plain meaning of the statute's text, which categorically bars *all* fiduciary self-dealing with plan assets, not just self-dealing involving a transaction with the plan.

The district court's interpretation is also contrary to the purpose of the statute, which "is to 'prevent a fiduciary from being put in a position where he has dual loyalties and, therefore, he cannot act exclusively for the benefit of a plan's participants and beneficiaries.'" *Reich v. Compton*, 57 F.3d 270, 287 (3d Cir. 1995) (Alito, J.) (quoting

H.R. Conf. Rep. No. 93–1280, 93rd Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5089). Given this purpose, the relevant inquiry under section 406(b)(1) is not, as the district court asked, whether the fiduciary caused the plan to engage in a transaction potentially harmful to the plan, but whether the fiduciary dealt with plan assets despite having a personal interest in how the assets were used.

Finally, the district court's narrow interpretation of section 406(b)(1) conflicts with the broad interpretation other circuits have given the statute. *See Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987) (holding that section 406(b)(1) should "be broadly construed"); *Leigh*, 727 F.2d at 126 ("We do not believe that Congress intended the language … 'deal … in his own interest,' § 406(b)(1), to be interpreted narrowly."). These circuits have held that the statute is violated when a fiduciary "uses the assets of a plan for its own benefit" without requiring a transaction with the plan. *Friend v. Sanwa Bank Cal.*, 35 F.3d 466, 470 (9th Cir. 1994).

For example, in *Guyan International, Inc. v. Professional Benefits Administrators, Inc.*, 689 F.3d 793 (6th Cir. 2012), the administrator misappropriated plan contributions. The administrator did not engage

39

in any transaction with the plan; it simply took for itself money that belonged to the plan. Notwithstanding the lack of any transaction between the plan and administrator, the Sixth Circuit "easily conclude[d]" that the misappropriation constituted "a classic case of self-dealing" in violation of section 406(b)(1) because the administrator "us[ed] Plan assets – money from the employers and the covered employees – for its own purposes." *Id.* at 798-99.

Similarly, in *Patelco Credit Union v. Sahni*, 262 F.3d 897 (9th Cir. 2001), the plan administrator misappropriated benefits checks from the plan's insurance provider. Despite the absence of any transaction between the plan and administrator, the Ninth Circuit held that the administrator engaged in "prohibited self-dealing" that was "in violation of § 1106(b)(1)." *Id.* at 911.

In construing section 406(b)(1) to require a transaction with the plan even though the text of the statute does not use the word "transaction," the district court adopted an atextual interpretation of ERISA contrary to the Supreme Court's teaching in *Sulyma*, 589 U.S. at 184. To justify its departure from the statute's text, the district court

relied on two cases, neither of which supports its atextual interpretation.

First, the district court relied on *Lockheed Corporation v. Spink*, 517 U.S. 882 (1996), for the proposition that "the payment of benefits in exchange for the performance of some condition by the employee is not a 'transaction' *within the meaning of § 406(a)(1).*" Appx12 (emphasis added) (quoting *Lockheed*, 517 U.S. at 888). In *Lockheed*, the employer offered "increased pension benefits" in exchange for participants releasing "employment-related claims." 517 U.S. at 885. The issue there was whether that exchange constituted a "'transaction' *in the sense that Congress used that term in § 406(a)." Id.* at 892–93 (emphasis added). There was no contention that the employer used plan assets as a credit toward its contribution obligations in violation of section 406(b)(1), as Plaintiff alleges here. And unlike the blanket prohibition in section 406(b)(1), the enumerated prohibitions set forth in section 406(a) are expressly limited to commercial "transactions" involving the plan. *See* 29 U.S.C. § 1106(a)(1). Because the statutory language of sections 406(b)(1) and 406(a) are materially different, the district court erred in applying *Lockheed* to Plaintiff's section 406(b)(1) claim.

41

Second, the district court relied on the Ninth Circuit's decision in *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004), for the proposition that "the Supreme Court has interpreted *§ 1106* to 'prohibit fiduciaries from involving the plan and its assets in certain kinds of business deals.'" Appx13 (emphasis in original) (quoting *Wright*, 360 F.3d at 1100). But *Wright* was referencing the Supreme Court's decision in *Lockheed*, which, as just explained, was limited to interpreting section 406(a). Neither *Lockheed* nor any other Supreme Court case has interpreted section 406(b)(1) to require a transaction.

## B.  Honeywell transacted with the Plan.

The district court also erred in concluding that Plaintiff failed to allege a transaction between Honeywell and the Plan. Appx12-13. One type of "transaction" expressly prohibited by section 406(a) is an "extension of credit between the plan and a party in interest." 29 U.S.C. § 1106(a)(1)(B). Construing the allegations in the light most favorable to Plaintiff, *see Mator*, 102 F.4th at 178, they show that Honeywell, a "party in interest," orchestrated an extension of credit transaction with the Plan.

Using a plan's assets to forgive an employer's contractual obligation to make contributions to a plan constitutes an "extension of credit" between the plan and employer. For example, in *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559 (1985), the Supreme Court explained that section 406(a)(1)(B) "requires that a benefit plan prevent participant employers from gaining even temporary use of assets to which the Plan is entitled, a requirement that would certainly create a trustee responsibility for assuring full and prompt collection of contributions owed to the Plan." *Id.* at 573 (citation omitted). *See also Sprague v. Cent. States, Se. & Sw. Areas Pension Fund*, 269 F.3d 811, 817–18 (7th Cir. 2001) (explaining that if an employer "had an obligation to contribute to the Fund" and "the parties agreed that the Fund would not collect the delinquent contributions, the arrangement may be deemed a prohibited transaction").

Here, the Plan obligates Honeywell to make matching contributions to its trust fund. Appx56 (Plan § 5.1). By choosing to use forfeited funds to decrease the amount of matching contributions it had to pay out of pocket, Honeywell caused the Plan to extend it credit in

43

violation of section 406(a)(1)(B).[6] *Sprague*, 269 F.3d at 817–18 (noting that a "transfer of plan assets" to satisfy an employer's "obligation to contribute to the Fund" would constitute an "extension of credit"). Accordingly, even if section 406(b)(1) requires a transaction, the district court erred in concluding that Plaintiff failed to allege one.

## CONCLUSION

The district court's order dismissing Plaintiff's First Amended Complaint should be reversed, and this case should be remanded to the district court with instructions to conduct further proceedings consistent with this Court's order.

Dated:  October 24, 2025          **HAYES PAWLENKO LLP**

By: *s/Kye D. Pawlenko*
Matthew B. Hayes
Kye D. Pawlenko
*Attorneys for Appellant*
*Luciano Barragan*

---

[6] To be clear, Plaintiff is not alleging a violation of section 406(a)(1)(B). Plaintiff argues only that to the extent a transaction is required to state a claim under section 406(b)(1), he has alleged such a transaction.

45

## CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

Dated: October 24, 2025                *s/Kye D. Pawlenko*
                                        Kye D. Pawlenko

## CERTIFICATE OF COMPLIANCE

I hereby certify the following:

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) because it contains 8,542 words, excluding those parts exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word Version 16.100.3 in 14-point Century Schoolbook font.

3.      This brief complies with the electronic filing requirements of Local R. 31.1(c) because the text of the electronic brief is identical to the text of the paper copies and because Norton 360 was run on the file containing the electronic version of this brief and no viruses were detected.

Dated: October 24, 2025                    *s/Kye D. Pawlenko*
                                           Kye D. Pawlenko

**CERTIFICATE OF SERVICE**

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on October 24, 2025. All counsel of record are registered CM/ECF users, and service will be accomplished through the CM/ECF system.

Dated: October 24, 2025                    *s/Kye D. Pawlenko*
                                           Kye D. Pawlenko