**No. 25-2609**

# In the United States Court of Appeals
## FOR THE THIRD CIRCUIT

LUCIANO BARRAGAN, individually and as a representative of a class of participants and beneficiaries on behalf of the Honeywell 401k Plan,

*Plaintiff-Appellant,*

v.

HONEYWELL INTERNATIONAL INC.,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of New Jersey
No. 24-cv-4529 (Honorable Evelyn Padin)

# BRIEF OF APPELLEE
# HONEYWELL INTERNATIONAL INC.

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C.  20004

STEPHANIE R. REISS
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre,
Thirty-Second Floor
Pittsburgh, PA  15219

JEREMY P. BLUMENFELD
COLLEEN A. GALLAGHER
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA  19103

SAMUEL D. BLOCK
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606

*Counsel for Defendant-Appellee Honeywell International Inc.*

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and Third Circuit LAR 26.1, Honeywell International Inc. makes the following disclosure:

(1)    For non-governmental corporate parties please list all parent corporations:

*None.*

(2)    For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

*None.*

(3)    If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

*None.*

(4)    In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list:  1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is

i

active participant in the bankruptcy proceeding.  If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

*Not applicable.*


Dated:  December 24, 2025        <u>s/ Michael E. Kenneally</u>
                                        MICHAEL E. KENNEALLY

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................... i

INTRODUCTION ..................................................................... 1

STATEMENT OF JURISDICTION ...................................................... 4

STATEMENT OF THE ISSUES ......................................................... 4

STATEMENT OF THE CASE .......................................................... 5

I.　Statutory background ......................................................... 5

II.　Factual background ........................................................... 9

III.　Procedural background ..................................................... 12

SUMMARY OF ARGUMENT ....................................................... 15

STANDARD OF REVIEW ............................................................ 17

ARGUMENT ........................................................................ 18

I.　Plaintiff's theory contradicts long-established law and practice regarding the use of forfeitures ..................................... 18

II.　The Plan does not permit using forfeitures to pay participants' share of Plan costs and expenses. .......................... 27

III.　Even if the Plan's language accommodated Plaintiff's theory, his three claims still fail as a matter of law. ............................. 35

A.　Plaintiff fails to adequately allege a breach of the duty of loyalty. ..................................................................... 37

B.　Plaintiff fails to adequately allege a breach of the duty of prudence. ................................................................. 44

C.　Plaintiff fails to adequately allege a prohibited transaction .................................................................. 46

CONCLUSION ...................................................................... 53

COMBINED CERTIFICATES OF COMPLIANCE ............................ 55

iii

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aaron v. SEC,*
446 U.S. 680 (1980)............................................................................23

*Aetna Health Inc. v. Davila,*
542 U.S. 200 (2004)..............................................................................5

*Alessi v. Raybestos-Manhattan, Inc.,*
451 U.S. 504 (1981)............................................................................36

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..................................................................... 17, 42

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)............................................................................17

*Bennett v. Conrail Matched Sav. Plan Admin. Comm.,*
168 F.3d 671 (3d Cir. 1999) ...................................................... 31, 36, 38

*Bill Gray Enters., Inc. Emp. Health & Welfare Plan v. Gourley,*
248 F.3d 206 (3d Cir. 2001) ........................................................ 28, 29

*Bozzini v. Ferguson Enters. LLC,*
2025 WL 1547617 (N.D. Cal. May 29, 2025).....................................26

*Buescher v. N. Am. Lighting, Inc.,*
791 F. Supp. 3d 873 (C.D. Ill. 2025) ............................................ 32, 33

*Cain v. Siemens Corp.,*
2025 WL 2172684 (D.N.J. July 31, 2025)...................................... 25, 26

*Cano v. Home Depot, Inc.,*
2025 WL 2589567 (N.D. Ga. Aug. 26, 2025) .....................................26

*CFTC v. Schor,*
478 U.S. 833 (1986)............................................................................23

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Conkright v. Frommert,*
559 U.S. 506 (2010) ................................................................... 5

*Cooke v. Lynn Sand & Stone Co.,*
70 F.3d 201 (1st Cir. 1995) ..................................................... 36

*Cunningham v. Cornell Univ.,*
604 U.S. 693 (2025) ................................................................ 50

*Curtiss-Wright Corp. v. Schoonejongen,*
514 U.S. 73 (1995) ........................................................... 34, 36

*Dimou v. Thermo Fisher Sci. Inc.,*
2025 WL 2611240 (S.D. Cal. Sep. 9, 2025) ............................ 26

*Dubin v. United States,*
599 U.S. 110 (2023) ........................................................... 49, 50

*Edwards v. Wilkes-Barre Pub. Co. Pension Tr.,*
757 F.2d 52 (3d Cir. 1985) ...................................................... 36

*Estay v. Ochsner Clinic Found.,*
2025 WL 2644782 (E.D. La. Sep. 15, 2025) ........................... 26

*Fifth Third Bancorp v. Dudenhoeffer,*
573 U.S. 409 (2014) ..................................................... 5, 17, 18, 44

*Foltz v. U.S. News & World Rep., Inc.,*
865 F.2d 364 (D.C. Cir. 1989) ...................................... 36, 37, 45

*Friend v. Sanwa Bank Cal.,*
35 F.3d 466 (9th Cir. 1994) ..................................................... 48

*Guyan Int'l, Inc. v. Pro. Benefits Adm'rs, Inc.,*
689 F.3d 793 (6th Cir. 2012) ............................................. 50, 51

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Hernandez v. AT&T Servs., Inc.,*
2025 WL 3208360 (C.D. Cal. Nov. 14, 2025) ....................................26

*Hlinka v. Bethlehem Steel Corp.,*
863 F.2d 279 (3d Cir. 1988) ......................................................36, 41

*Hughes Aircraft Co. v. Jacobson,*
525 U.S. 432 (1999).............................................................7, 34, 39

*Hughes v. Nw. Univ.,*
595 U.S. 170 (2022)..........................................................17, 42, 45

*Hutchins v. HP Inc. ("Hutchins I"),*
737 F. Supp. 3d 851 (N.D. Cal. 2024)..........................................24, 25

*Hutchins v. HP Inc. ("Hutchins II"),*
767 F. Supp. 3d 912 (N.D. Cal. 2025)....................................15, 26, 45

*Hutchins v. HP Inc.,*
No. 25-826 (9th Cir. 2025), ECF No. 24 .....................................26, 27

*In re Unisys Sav. Plan Litig.,*
173 F.3d 145 (3d Cir. 1999) .............................................................44

*Jacobs Project Mgmt. Co. v. U.S. Dep't of Interior,*
64 F.4th 123 (3d Cir. 2023)...............................................................52

*Leigh v. Engle,*
727 F.2d 113 (7th Cir. 1984)............................................................48

*Lockheed Corp. v. Spink,*
517 U.S. 882 (1996)................................................................ *passim*

*Loomis v. Exelon Corp.,*
658 F.3d 667 (7th Cir. 2011)......................................................34, 42

vi

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Lowen v. Tower Asset Mgmt., Inc.*,
829 F.2d 1209 (2d Cir. 1987) ........................................................48

*Madrigal v. Kaiser Found. Health Plan, Inc.*,
2025 WL 1299002 (C.D. Cal. May 2, 2025) .......................................26

*Mator v. Wesco Distrib., Inc.*,
102 F.4th 172 (3d Cir. 2024) ........................................................45

*McMahon v. McDowell*,
794 F.2d 100 (3d Cir. 1986) ........................................................37

*McManus v. Clorox Co. ("McManus I")*,
2024 WL 4944363 (N.D. Cal. Nov. 1, 2024) ......................................32

*McManus v. Clorox Co. ("McManus II")*,
2025 WL 732087 (N.D. Cal. Mar. 3, 2025) .......................................31

*McWashington v. Nordstrom, Inc.*,
2025 WL 1736765 (W.D. Wash. June 23, 2025) ..........................26, 45

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993) ...............................................................6, 25

*Naylor v. BAE Sys., Inc.*,
2024 WL 4112322 (E.D. Va. Sep. 5, 2024) .......................................26

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*,
587 U.S. 601 (2019) ..................................................................21

*Patelco Credit Union v. Sahni*,
262 F.3d 897 (9th Cir. 2001) ...................................................50, 51

*Pegram v. Herdrich*,
530 U.S. 211 (2000) ....................................................................7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Perez-Cruet v. Qualcomm Inc.*,
2024 WL 2702207 (S.D. Cal. May 24, 2024) .............................. 32, 33

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*,
967 F.3d 218 (3d Cir. 2020) ................................................... 27

*Polanco v. WPP Grp. USA, Inc.*,
2025 WL 3003060 (S.D.N.Y. Oct. 27, 2025) ......................... 26

*Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*,
541 U.S. 1 (2004) ................................................................... 39

*Renfro v. Unisys Corp.*,
671 F.3d 314 (3d Cir. 2011) .................................................. 17

*Rodriguez v. Intuit Inc.*,
744 F. Supp. 3d 935 (N.D. Cal. 2024) ....................... 32, 33, 41

*Rozo v. Principal Life Ins. Co.*,
48 F.4th 589 (8th Cir. 2022) .................................................. 36

*Sievert v. Knight-Swift Transp. Holdings, Inc.*,
780 F. Supp. 3d 870 (D. Ariz. 2025) ..................................... 26

*Struble v. N.J. Brewery Employees' Welfare Tr. Fund*,
732 F.2d 325 (3d Cir. 1984) ....................................... 39, 40, 41

*US Airways, Inc. v. McCutchen*,
569 U.S. 88 (2013) ................................................................. 35

*Varity Corp. v. Howe*,
516 U.S. 489 (1996) ................................................................. 6

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001) ............................................................... 25

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Wright v. JPMorgan Chase & Co.*,
  2025 WL 1683642 (C.D. Cal. June 13, 2025) .............................. 26, 33

*Wright v. Or. Metallurgical Corp.*,
  360 F.3d 1090 (9th Cir. 2004) ....................................................... 36, 47

**STATUTES**

26 U.S.C. § 401 .................................................................................... 43

28 U.S.C. § 1291 .................................................................................... 4

28 U.S.C. § 1331 .................................................................................... 4

Employee Retirement Income Security Act

  29 U.S.C. § 1001 .................................................................................. 35

  29 U.S.C. § 1002 .......................................................................... 1, 6, 9

  29 U.S.C. § 1102 ................................................................................... 6

  29 U.S.C. § 1103 .......................................................................... 38, 39

  29 U.S.C. § 1104 ........................................................................ *passim*

  29 U.S.C. § 1106 ........................................................................ *passim*

  29 U.S.C. § 1108 ................................................................................... 8

  29 U.S.C. § 1109 ................................................................................... 8

  29 U.S.C. § 1132 ............................................................................. 4, 8

  29 U.S.C. § 1144 ................................................................................. 21

  29 U.S.C. § 1204 ................................................................................. 19

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Self-Employed Individuals Tax Retirement Act of 1962, Pub. L. No. 87-792, § 2(2), 76 Stat. ..................................................................19

Tax Reform Act of 1986, Pub. L. No. 99-514.....................................22, 23

**RULES & REGULATIONS**

26 C.F.R.
§ 1.401-1 .........................................................................................20
§ 1.401-7 .....................................................................................20, 24

29 C.F.R. § 2550.404a-5 ......................................................................11

FED. R. APP. P. 4 ....................................................................................4

Rev. Rul. 71-313, 1971-2 C.B. 203 .......................................................20

*Use of Forfeitures in Qualified Retirement Plans*, 88 Fed. Reg. 12282 (Feb. 27, 2023)....................................................................................24

**OTHER AUTHORITIES**

BLACK'S LAW DICTIONARY 487 (rev. 4th ed. 1968) ...............................49

H.R. REP. NO. 99-841 (1986)...........................................................22, 23

MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/deal%20with................................................49

U.S. DEP'T OF LABOR, HISTORY OF EBSA AND ERISA, https://www.dol.gov/agencies/ebsa/about-ebsa/about-us/history-of-ebsa-and-erisa (last visited Dec. 24, 2025).......................................19

U.S. Dep't of Labor, *Understanding Retirement Plan Fees and Expenses* (Sep. 2021), https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/retirement-plan-fees-expenses.pdf................................................................................10

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

WEBSTER'S NEW WORLD DICTIONARY (college ed. 1968) ........................... 49

## INTRODUCTION

This case is part of a wave of recent class-action lawsuits pressing an unprecedented theory of liability under the Employee Retirement Income Security Act ("ERISA").  Unlike many ERISA cases, Plaintiff does not allege that the fiduciaries of his retirement plan diminished retirees' benefits by offering underperforming investments or incurring excessive expenses.  Nor does he claim that the terms of his plan promised benefits it did not deliver—on the contrary, Plaintiff undisputedly received all the benefits promised to him.  Rather, Plaintiff seeks to impose an obligation on Defendant Honeywell International Inc. ("Honeywell") to provide additional benefits.  Such an obligation would conflict with ERISA, Treasury regulations, Supreme Court and appellate precedent, and the terms of his plan.  The district court rightly rejected Plaintiff's theory.

The theory hinges on the plan's use of "forfeitures."  In many retirement plans, if employees leave their employment before the employer's contributions vest, they forfeit their right to the unvested amounts.  Consistent with longstanding Treasury regulations, the terms of Plaintiff's plan allowed Honeywell to use such forfeitures to provide benefits for other participants by offsetting the contributions that Honeywell would

1

otherwise have made to provide those benefits.  Alternatively, Honeywell could use forfeitures to defray certain administrative expenses of the plan.  But the plan specified elsewhere that participants "shall" pay "all" of the "costs and expenses of administering the Plan . . . from their Accounts in the Plan[,]" except for a narrow subset of costs and expenses otherwise charged to the federal government through certain union contracts.  Appx123 (Plan § 14.5).

Plaintiff did not incur a forfeiture personally.  But despite the plan language mandating that he pay the costs and expenses at issue here, he contends that ERISA obligated Honeywell to use forfeitures to reduce the plan expenses that participants would otherwise pay because that is better for participants.  Even though sponsors of ERISA plans have no obligation to pay plan expenses, and even though Honeywell's plan explicitly *required* participants to pay these expenses, Plaintiff says that ERISA gives Honeywell a legal *duty* to do so.

After two rounds of briefing, the district court rejected this novel theory.  The overwhelming majority of courts to consider this sort of theory have done the same.  This Court should, too.

2

While the plain terms of Plaintiff's retirement plan provide reason enough to affirm the district court, his theory would fail even if those terms were not written to require participants to bear the relevant costs and expenses. Federal law has long allowed retirement plan sponsors to use forfeited employer contributions to provide benefits to participants by offsetting other employer contributions. That use of forfeitures continued to be a lawful and common practice after ERISA's enactment. Had Congress meant to restrict this ubiquitous practice, it would have said so. And the Treasury Department and the Department of Labor (both of which have regulatory authority over pension plans) would have said so, too. Instead, Congress has recognized—but has made no effort to restrict—the practice. And federal regulators have consistently approved of it. Recently proposed Treasury regulations reaffirm that retirement plans may lawfully use forfeitures to reduce employer contributions. And the Department of Labor has recently argued as an amicus curiae that the basic theory underlying this wave of forfeitures cases fails to state a plausible claim for relief.

ERISA does not regulate an employer's decisions about what benefits to provide employees or whether to fund the costs of plan

3

administration.  Nor does ERISA obligate employers to maximize the amount of benefits they choose to provide employees or relieve plan participants from having to pay plan expenses.  The district court was correct to dismiss Plaintiff's lawsuit, and its judgment should be affirmed.

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) because Plaintiff asserts claims under 29 U.S.C. § 1132(a).  Appx63 (Am. Comp. ¶ 4).  This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the district court entered a final decision dismissing all claims without leave to amend and entered final judgment in Honeywell's favor.  Appx3.  The district court entered its judgment on August 18, 2025, *id.*, and Plaintiff filed a timely notice of appeal on August 19, 2025.  Appx1-2; *see* FED. R. APP. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES

1.    Whether Plaintiff failed to state an ERISA claim because the plan terms do not permit using forfeitures to pay participants' share of administrative expenses.

2.    Whether, assuming the plan terms allowed using forfeitures to pay participants' share of plan expenses, Plaintiff failed to plausibly

4

allege that Honeywell's application of forfeitures toward ongoing employer contributions violated ERISA's (a) duty of loyalty, (b) duty of prudence, or (c) "self-dealing" prohibited-transaction provision.

## STATEMENT OF THE CASE

### I.   Statutory background

ERISA is "a comprehensive statute for the regulation of employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).  The statute reflects a "careful balancing" of competing aims.  *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (citation omitted).  Congress, on the one hand, wanted employees to "receive the benefits they had earned." *Id.* at 516.  But Congress did not require employers to offer employee benefits and instead relied on their voluntary decision to do so.  *Id.*  So Congress took care to balance "fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 424 (2014) (citation omitted).  Courts must take account of both aims in construing the statute's duties.  *See id.* at 424-25.

Plans must be established and maintained pursuant to a written instrument, often referred to as the plan document.  The plan document

must "provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1); *see also* 29 U.S.C. § 1102(a)(2). ERISA subjects these fiduciaries to duties that are partly rooted in the common law of trusts. *See, e.g.*, *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996). But ERISA does not define a plan fiduciary "in terms of formal trusteeship." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). Instead, the statute generally defines "fiduciary" "in *functional* terms." *Id.* Under that definition:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

Given ERISA's careful design and detailed provisions, including its functional definition of "fiduciary," the Supreme Court has cautioned that "the analogy between ERISA fiduciary and common law trustee [can

be] problematic" if extended too far. *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000). Importantly, an ERISA fiduciary may lawfully "wear different hats" in a way that a common law trustee typically would not. *Id.* For instance, some employers sponsor plans and administer them. *Id.* To the extent an employer acts in its capacity as a plan administrator, it wears its "fiduciary" hat and performs a fiduciary function. *Id.* at 225-26. Yet the employer wears a "plan sponsor[]" hat when it takes non-fiduciary actions, like "modifying the terms of a plan as allowed by ERISA to provide less generous benefits." *Id.* at 225. When employers act in their capacity as plan sponsors in deciding what benefits to provide, they "do not act as fiduciaries" but rather "are analogous to the settlors of a trust." *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443 (1999).

Decisions made while wearing a "fiduciary" hat are subject to ERISA's fiduciary duties. Those duties include the *duty to follow the terms of the plan* to the extent those terms are consistent with ERISA. 29 U.S.C. § 1104(a)(1)(D) (fiduciary must act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]").

7

ERISA's *duty of loyalty* requires fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries" and "defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1). ERISA also imposes a *duty of prudence*, which requires fiduciaries to "discharge [their] duties . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). ERISA also provides fiduciaries a list of *prohibited-transaction* rules and exemptions to those rules. 29 U.S.C. §§ 1106, 1108.

ERISA creates a detailed enforcement scheme. As relevant here, fiduciaries are "personally liable to make good to [their] plan any losses to the plan" resulting from breaches of their statutory duties. 29 U.S.C. § 1109(a). Participants and beneficiaries have a cause of action to seek such relief on behalf of the plan. *See* 29 U.S.C. § 1132(a)(2).

8

## II.    Factual background[1]

The Honeywell 401(k) Plan is one way that Honeywell helps employees save for retirement.  It is a defined contribution, individual account pension plan under ERISA.  Appx63 (Am. Compl. ¶ 6).  In such a plan, a participant's benefit is based on the assets in his or her individual account, including gains, losses, and expenses.  Appx65 (Am. Compl. ¶ 13); 29 U.S.C. § 1002(34).  Honeywell is the Plan's sponsor.  Appx63 (Am. Compl. ¶ 7).  Honeywell's Vice President – Human Resources, Compensation and Benefits is the "Plan Administrator" and "Named Fiduciary."  Appx121 (Plan § 14.1); Appx106 (Plan § 2.47).

The Plan is funded through two primary sources:  (1) employee contributions, withheld from a participant's wages; and (2) employer contributions.  Appx65 (Am. Compl. ¶ 12).  Participants are always fully vested in their own contributions.  Appx65 (Am. Compl. ¶ 16); Appx119 (Plan § 7.1).  Employer contributions, in contrast, have a three-year vesting schedule:  participants become 100% vested in employer contributions in

---

[1]  The record materials cited in the factual and procedural background include Plaintiff's original and amended complaints and the Plan document, which the district court properly concluded was incorporated by reference into the complaints.  Appx5 n.2; Appx16 nn.2-3.

their accounts if they stay employed for three years. Appx65 (Am. Compl. ¶ 16); Appx119 (Plan § 7.2). Participants whose employment ends before vesting forfeit any unvested employer contributions. Appx65-66 (Am. Compl. ¶ 17); Appx119-20 (Plan § 7.3).

The Plan generally provides that forfeitures "may be applied to reduce subsequent [employer contributions] provided for under the Plan, to defray administrative expenses of the Plan, . . . or for any other purpose permitted under IRS rules." Appx119-20 (Plan § 7.3). At the same time, the Plan mandates that "[a]ll costs and expenses of administering the Plan and managing the Funds, except for certain administrative costs and expenses receivable or chargeable to the United States Department of Energy (or any successor agency) under the terms of union contracts covering FM&T Participants, shall be borne by the Participants and paid from their Accounts in the Plan." Appx123 (Plan § 14.5).

Operating a 401(k) plan generates expenses for services necessary to administer the plan, including recordkeeping, accounting, legal, trustee, and other administrative services.[2] An employer may volunteer to

---

[2]   *See* U.S. Dep't of Labor, *Understanding Retirement Plan Fees and Expenses* (Sep. 2021), https://www.dol.gov/sites/dolgov/files/ebsa/about-

bear these expenses in whole or in part, or it may decide (as many do) to charge these expenses against the plan's assets and allocate them among its participants. Department of Labor regulations require a plan's administrator to disclose any administrative fees that "may be charged against the individual accounts of participants." 29 C.F.R. § 2550.404a-5(c)(2)(i)(A).

Plaintiff is a former Plan participant. Appx62 (Am. Compl. ¶ 3). He alleges that Honeywell used forfeitures to reduce employer contributions, as the Plan explicitly allows. Appx68-69 (Am. Compl. ¶¶ 30-35). That is, Plaintiff claims that contributions Honeywell made in prior years for participants who ultimately forfeited those amounts were reallocated as employer contributions to other participants' accounts, in lieu of new contributions Honeywell would have credited to the same accounts. *Id.* Plaintiff claims that ERISA required Honeywell to use forfeitures to pay participants' share of Plan expenses despite the Plan language stating that these expenses "shall be borne by the Participants and paid from their Accounts in the Plan." Appx123 (Plan § 14.5).

---

ebsa/our-activities/resource-center/publications/retirement-plan-fees-expenses.pdf.

Plaintiff does not allege that he or any other Plan participant ever received lower contributions than the Plan promised. Nor does he allege that he, or any other Plan participant, incurred unreasonably high expenses. Rather, he claims that if Honeywell had used forfeitures to pay participants' share of Plan expenses, his and other participants' account balances would be higher because they would have received free (or highly subsidized) administrative services paid for by Honeywell. Appx69-70 (Am. Compl. ¶ 36).

## III.  Procedural background

Plaintiff filed this putative class action on February 13, 2024. Appx165. Honeywell moved to dismiss the complaint for failure to state a claim. Appx170. The district court granted the motion and dismissed the complaint with leave to amend. Appx14-27.

Plaintiff filed an amended complaint that dropped several claims but pressed the same basic theory about forfeiture use. The amended complaint asserts three counts, all based on Honeywell's use of Plan forfeitures. Plaintiff first claims Honeywell breached ERISA's fiduciary duties of loyalty (Count I) and prudence (Count II). Appx73-76 (Am. Compl. ¶¶ 42-55); *see* 29 U.S.C. § 1104(a)(1)(A)-(B). In addition, Plaintiff claims

that using forfeitures as the Plan permits was a prohibited transaction (Count III). Appx77-78 (Am. Compl. ¶¶ 56-60); *see* 29 U.S.C. § 1106(b)(1).

Honeywell moved to dismiss the amended complaint. Appx173. The district court granted the motion, this time without leave to amend. Appx3-13.

The district court began by highlighting the relevant Plan provisions: Sections 7.3 and 14.5. The court observed that while Section 7.3 "*authorizes* Honeywell's decision to 'defray administrative expenses of the Plan' through application of forfeited amounts[,]" Section 14.5 "*mandates* that '[a]ll costs and expenses of administering the Plan . . . shall be borne by the Participants and paid from their Accounts in the Plan.'" Appx8 (emphasis added) (quoting Plan §§ 7.3, 14.5). The court also observed that even though Plaintiff had been afforded a "second bite at the apple," his amended complaint amounted to nothing more than "the same legal theory" that it found implausibly broad: "when a fiduciary has the discretion to allocate forfeitures, ERISA requires it to choose the 'best' option for Plan participants." Appx9. This broad theory implied that every time Honeywell chose whether to use forfeitures to pay administrative costs or apply them toward employer contributions, the only

13

lawful choice would be to pay administrative costs. Appx10. Such a result would not only confer "an additional benefit" that Honeywell did not agree to provide; it would also "override" Section 14.5, which "indicates Honeywell's intent *as settlor* in determining how expenses are paid." *Id.* & n.3 (emphasis added).

The Court then turned specifically to Plaintiff's fiduciary-duty claims. As for the duty of loyalty (Count I), the court explained that ERISA does not obligate fiduciaries to maximize benefits. Appx10. Plaintiff asserted that Honeywell had a conflict of interest in administering the Plan's forfeiture provision merely because applying forfeitures toward contributions effectively lowered Honeywell's cost of providing benefits. Appx11. But this theory ignored that the potential for a conflict of interest is not enough to make a duty of loyalty claim plausible, especially when Honeywell was complying with the Plan's terms and participants received "all benefits promised." Appx10. As for the duty of prudence (Count II), Plaintiff's theory again swept too broadly. Appx11-12. His view "functionally" amounted to a categorical rule that "forfeitures must always be used to pay Plan participants' administrative expenses before they can be allocated to reducing a company's matching contributions."

14

*Id.* (quoting *Hutchins v. HP Inc.* ("*Hutchins II*"), 767 F. Supp. 3d 912, 927 (N.D. Cal. 2025)). That left the prohibited-transaction claim (Count III). Although Plaintiff insisted that a prohibited-transaction claim under 29 U.S.C. § 1106(b) does not require a transaction, the district court found that argument inconsistent with Supreme Court precedent. Appx12-13. Using plan assets to pay plan benefits is not a "transaction," much less a prohibited one, so this claim failed too. *Id.*

## SUMMARY OF ARGUMENT

I.     Plaintiff's basic theory—that employers must use forfeitures to pay expenses so participants do not have to pay them—is inconsistent with the prevailing understanding and practice since before ERISA's enactment. In the many decades that pension plans have been regulated by federal law, it has been lawful (and in some cases obligatory) to apply forfeited amounts toward employer contributions. Congress passed ERISA (and later amendments to ERISA) on that understanding, and it has never hinted that ERISA's general fiduciary-duty and prohibited-transactions provisions upend this longstanding principle. Nor have federal regulators ever called this principle into question. On the contrary, the Treasury Department has sought to reaffirm that principle in

15

proposed regulations, and the Department of Labor defended that principle in recent amicus briefing as this new forfeiture litigation started to reach appellate courts.

II.    Beyond seeking to upend long-settled law and practice, Plaintiff's theory fails under the Plan's clear terms.    Contrary to his basic premise, the Plan here does not permit Honeywell to use forfeitures to pay the expenses that Plaintiff pays.    Although the Plan does permit using forfeitures to defray some administrative expenses, it *mandates* that participants pay all costs and expenses of administering the Plan except for a subset of costs and expenses receivable or chargeable to the U.S. Department of Energy under the terms of certain union contracts.    Plaintiff acknowledges that he cannot challenge that aspect of the Plan's design. So he pretends the Plan's terms say something else.    The district court correctly rejected his misinterpretation of the Plan.

III.    In all events, Plaintiff's complaint fails to satisfy the pleading standards that the Supreme Court, this Court, and others have applied to ERISA fiduciary-duty and prohibited-transaction claims.    His duty of loyalty and duty of prudence claims each seek a sweeping rule that effectively forecloses employers from ever using forfeitures in any way other

16

than to subsidize plan expenses that participants would otherwise pay, at least if their plan permits that subsidy. But Plaintiff does not and cannot cite any precedent finding that ERISA obligates employers to pay plan expenses, because ERISA does nothing of the sort. And Plaintiff's prohibited-transaction claim fails for the simple reason that he has not challenged any "transaction" within the statute's sense.

For all these reasons, Plaintiff's complaint fails to state a claim on which relief can be granted. The district court's judgment should be affirmed.

## STANDARD OF REVIEW

The Court's review of a Rule 12(b)(6) motion to dismiss is plenary. *Renfro v. Unisys Corp.*, 671 F.3d 314, 320 (3d Cir. 2011). ERISA claims are subject to "the pleading standard discussed in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022). Plaintiffs must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citation omitted). A motion to dismiss is an "important mechanism for weeding out meritless claims" in ERISA class actions. *Dudenhoeffer*, 573 U.S. at 425. To

17

appropriately separate the "plausible sheep from the meritless goats," courts must give "careful, context-sensitive" consideration to the complaint's allegations. *Id.* at 425. As the district court held, Plaintiff's allegations fail under these standards.

## ARGUMENT

### I. Plaintiff's theory contradicts long-established law and practice regarding the use of forfeitures.

Since even before ERISA, Treasury regulations have permitted (and in some instances mandated) applying forfeitures toward ongoing employer contributions. When Congress revamped the Tax Code and simultaneously made changes to ERISA in 1986, it acknowledged the lawfulness of this use of forfeitures and made no attempt to restrict it. And just two years ago, the Treasury Department proposed a new regulation that again provides express authorization for plans to use forfeitures to reduce employer contributions. Plaintiff's claims thus contradict longstanding law and practice. His arguments come nowhere near establishing that unbeknownst to everyone, ERISA has restricted this widespread practice all along.

18

Pension plans fall within the regulatory authority of both the Department of Labor and the Department of the Treasury. ERISA requires those agencies to coordinate when enforcing statutes relating to the same subject matter. 29 U.S.C. § 1204(a). Pension plans relate to employee benefits, of course, but they also affect the government's collection of tax revenue. Generally speaking, employers may take a deduction for their contributions to qualified pension plans. In simplified terms, the more deductible contributions employers make, the less they pay in taxes. *See* U.S. DEP'T OF LABOR, HISTORY OF EBSA AND ERISA, https://www.dol.gov/agencies/ebsa/about-ebsa/about-us/history-of-ebsa-and-erisa (last visited Dec. 24, 2025). The Internal Revenue Code and Treasury Department therefore put many restrictions on qualified pension plans, such as by generally requiring that qualified plans be funded through a trust.

In 1962, Congress added Section 401(a)(8) to the Tax Code, which stated, "A trust forming part of a pension plan shall not constitute a qualified trust under this section unless the plan provides that forfeitures must not be applied to increase the benefits any employee would otherwise receive under the plan." Self-Employed Individuals Tax Retirement

19

Act of 1962, Pub. L. No. 87-792, § 2(2), 76 Stat. 809, 810.  Without this restriction, employers would have been able to continue making tax-deductible contributions to a plan even after such contributions had become unnecessary to properly fund the benefits that the plan promised.  The Treasury Department implemented this restriction in a regulation the following year:

> In the case of a trust forming a part of a qualified pension plan, **the plan must expressly provide that forfeitures ... must not be applied to increase the benefits any employee would otherwise receive** under the plan at any time prior to the termination of the plan or the complete discontinuance of employer contributions thereunder. **The amounts so forfeited must be used as soon as possible to reduce the employer's contributions under the plan. ...**

26 C.F.R. § 1.401-7(a) (emphasis added).  The regulation's prohibition against increasing benefits was primarily concerned with defined benefit pension plans.  *See* 26 C.F.R. § 1.401-1(b)(1)(i).  But the Treasury Department made clear that defined contribution pension plans, including profit-sharing and stock bonus plans like Honeywell's Plan, *see* Appx93-94 (Plan §§ 1.3, 1.4), were also permitted to use forfeitures to reduce employer contributions.  Rev. Rul. 71-313, 1971-2 C.B. 203 ("[P]rofit-sharing and stock bonus plans may provide that forfeitures be used to reduce

employer contributions that otherwise would be required under the contribution formula contained in the plan.").

"It is a commonplace of statutory interpretation that 'Congress legislates against the backdrop of existing law.'" *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 611 (2019) (citation omitted). So, when Congress enacted ERISA in 1974, it would have taken clear action had it intended to curtail the leeway that employers had under preexisting law to use forfeitures to reduce contributions. Congress would not have silently restricted employers' ability to use forfeitures as tax law authorized them to do. Indeed, Congress specified in ERISA that "[n]othing in [ERISA's subchapter I] shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law." 29 U.S.C. § 1144(d). Yet that is ultimately what Plaintiff hypothesizes—that several general provisions in ERISA subchapter I, without even mentioning forfeitures, implicitly altered the express permission that plan sponsors had under the Tax Code and regulations to use forfeitures to reduce contributions.

Later legislation confirms that ERISA did not work that major change to the law. In 1986, Congress reformed the Tax Code and

amended ERISA in multiple ways. *See* Tax Reform Act of 1986, Pub. L. No. 99-514, 100 Stat. 2085. One of the changes was to Section 401(a)(8) in the Tax Code, which—as noted above—originally prohibited "pension plan" trusts from using forfeitures to increase benefits that employees would otherwise receive. In 1986, Congress replaced the phrase "pension plan" with the phrase "defined benefit plan." The legislative history for this provision notes that under then-existing law, certain types of defined contribution plans (including stock bonus plans) could use forfeitures "to reduce future employer contributions or to offset administrative expenses," among other options. H.R. REP. NO. 99-841, at II-442 (1986) (Conf. Rep.). The new legislation sought to "create[] uniform rules for forfeitures under any defined contribution plan." *Id.* Going forward, "forfeitures arising in any defined contribution plan . . . [could] be either (1) reallocated to the accounts of other participants in a nondiscriminatory fashion, or (2) used to reduce future employer contributions or administrative costs." *Id.*

Thus, Congress's understanding in 1986, just twelve years after ERISA's enactment, was that defined contribution plans like the Plan could use forfeitures to reduce employer contributions. There is no hint

22

that anyone thought ERISA had restricted that option. Nor was there any effort to change the statute to do so, even though the 1986 legislation changed many other aspects of ERISA. *See, e.g.*, Tax Reform Act of 1986, Pub. L. No. 99-514, §§ 1139(c), 1145(b), 1852(i), 1879(u)(1), 1898(a)(4)(B), 100 Stat. 2085, 2487, 2491, 2869, 2913, 2944. Rather, in amending Section 401(a)(8), Congress sought to clarify that all defined contribution plans could use forfeitures in any of the three ways—reallocating them to other participants, paying plan expenses, or reducing future employer contributions. H.R. REP. NO. 99-841 at II-442. "Where, as here, 'Congress has not just kept its silence by refusing to overturn the administrative construction, but has ratified it with positive legislation,' [courts] cannot but deem that construction virtually conclusive." *CFTC v. Schor*, 478 U.S. 833, 846 (1986); *Aaron v. SEC*, 446 U.S. 680, 718 n.9 (1980) (Blackmun, J., concurring in part and dissenting in part) ("[T]he views of a subsequent Congress are entitled to some weight, particularly when that Congress undertakes significant revision of the statute but leaves the disputed provision intact.").

Nothing has changed since 1986 to support an inference that now ERISA prohibits using forfeitures to reduce employers' contributions.

23

Just the opposite. The Treasury Department proposed a new rule on forfeiture use before Plaintiff filed this lawsuit, and this proposed rule recounted the history above and sought to codify the practice of the prior sixty years. *Use of Forfeitures in Qualified Retirement Plans*, 88 Fed. Reg. 12282 (Feb. 27, 2023). To that end, the Department proposed a new Section 1.401-7(a) to clarify permitted use of forfeitures in defined contribution plans. Under the proposal, a defined contribution plan must specify that forfeitures "will be used for one or more of the following purposes: (i) [t]o pay plan administrative expenses; (ii) [t]o reduce employer contributions under the plan; or (iii) [t]o increase benefits in other participants' accounts in accordance with plan terms." *Id.* at 12285.

The district court appreciated that this proposed regulation is not binding law. Appx20 n.5. But even so, the proposed regulation helps illustrate why "Plaintiff's theory of liability has broad reach, and it is the theory's breadth that makes it implausible." Appx9 (quoting *Hutchins v. HP Inc.* ("*Hutchins I*"), 737 F. Supp. 3d 851, 862 (N.D. Cal. 2024)). If accepted, his theory "would improperly extend ERISA beyond its bounds" and contravene "the settled understanding of Congress and the Treasury Department regarding defined contribution plans like the one at issue in

24

this case." *Hutchins I*, 737 F. Supp. 3d at 862-63; *see also Cain v. Siemens Corp.*, 2025 WL 2172684, at \*5 (D.N.J. July 31, 2025) ("It would be difficult to square this understanding [shared by Congress and Treasury] with a finding that the practice [of using forfeitures to reduce employer contributions] violates ERISA.").

Statutes do not unsettle established understandings so easily. Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). Particularly not in ERISA, which is a "'comprehensive and reticulated statute,' the product of a decade of congressional study of the Nation's private employee benefit system." *Mertens*, 508 U.S. at 251 (citation omitted). This "enormously complex and detailed statute . . . resolved innumerable disputes between powerful competing interests—not all in favor of potential plaintiffs." *Id.* at 262. ERISA's "carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Id.* at 254 (citation omitted).

Had ERISA restricted plans' ability to use forfeitures to reduce employers' contributions—contrary to then-longstanding practice—the

25

statute would say so explicitly. And it would not have taken fifty years for anyone to notice. That helps explain why nearly all courts to consider the question have agreed with the district court below and the District of New Jersey in *Cain*, 2025 WL 2172684, at *4-6: ERISA does not impose the obligations that Plaintiff claims.[3]

This legal backdrop also explains why the Department of Labor has recently expressed its position that forfeiture-related allegations like Plaintiff's do not state a plausible claim for relief. Br. for the U.S. Sec'y of Labor as Amicus Curiae Supporting Defendant-Appellee, *Hutchins v.*

---

[3] *See, e.g., Hernandez v. AT&T Servs., Inc.*, 2025 WL 3208360, at *4 (C.D. Cal. Nov. 14, 2025); *Polanco v. WPP Grp. USA, Inc.*, 2025 WL 3003060, at *4-6 (S.D.N.Y. Oct. 27, 2025); *Estay v. Ochsner Clinic Found.*, 2025 WL 2644782, at *2-5 (E.D. La. Sep. 15, 2025); *Dimou v. Thermo Fisher Sci. Inc.*, 2025 WL 2611240, at *6-7 (S.D. Cal. Sep. 9, 2025), *appeal pending* (9th Cir.); *Cano v. Home Depot, Inc.*, 2025 WL 2589567, at *6 (N.D. Ga. Aug. 26, 2025); *Wright v. JPMorgan Chase & Co.*, 2025 WL 1683642, at *2-7 (C.D. Cal. June 13, 2025), *appeal pending* (9th Cir.); *McWashington v. Nordstrom, Inc.*, 2025 WL 1736765, at *13-16 (W.D. Wash. June 23, 2025); *Bozzini v. Ferguson Enters. LLC*, 2025 WL 1547617, at *2 (N.D. Cal. May 29, 2025); *Madrigal v. Kaiser Found. Health Plan, Inc.*, 2025 WL 1299002, at *4-7 (C.D. Cal. May 2, 2025); *Sievert v. Knight-Swift Transp. Holdings, Inc.*, 780 F. Supp. 3d 870, 878-79 (D. Ariz. 2025); *Hutchins II*, 767 F. Supp. at 922-23 (N.D. Cal. 2025), *appeal pending* (9th Cir.); *Naylor v. BAE Sys., Inc.*, 2024 WL 4112322, at *3-7 (E.D. Va. Sep. 5, 2024).

*HP Inc.*, No. 25-826 (9th Cir. 2025), ECF No. 24.[4]  The Secretary of Labor "has a substantial interest in fostering established standards of conduct for fiduciaries by clarifying the Secretary's view that a fiduciary's use of forfeited employer contributions in the manner alleged in this case, without more, would not violate ERISA." *Id.* at 1.

As discussed next, Plaintiff's allegations here fail to state a claim for two core reasons.  First, the Plan's language precludes Plaintiff's request for subsidized plan expenses by mandating that such expenses be borne by participants out of their Plan accounts.  Second, even if the Plan *did permit* Plaintiff's request for a subsidy for his share of expenses, his allegations still would not describe any plausible breach of ERISA's duty of loyalty, duty of prudence, or prohibited-transactions provision.

## II.   The Plan does not permit using forfeitures to pay participants' share of Plan costs and expenses.

Even if the Court were open to looking past longstanding law and practice that supports using forfeitures to reduce employer contributions,

---

[4]   The Secretary of Labor's brief "is properly the subject of judicial notice" and entitled to *Skidmore* deference.  *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 237 n.23 (3d Cir. 2020).

Plaintiff's theory has a separate, fatal problem: it contravenes the Plan's "plain terms." Appx10.

The "crux" of Plaintiff's theory of liability "is that *any* time a fiduciary is given the option to use forfeited amounts to either reduce employer contributions or pay administrative costs, the fiduciary *must* choose the latter." Appx22. If applied here, "[s]uch a theory would result in an override of [Section] 14.5 of the Plan," which "mandat[es] that administrative costs are to be borne by Plan participants." Appx10. As a result, his fiduciary-breach and prohibited-transaction claims cannot succeed.

When interpreting ERISA plans, courts look "first" at the "plain language" of the plan. *Bill Gray Enters., Inc. Emp. Health & Welfare Plan v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001), *abrogated on other grounds by Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002). Here, as the district court observed, the key Plan language is found in Section 7.3 (which "authorizes" certain uses of forfeitures) and Section 14.5 (which "mandates" how Plan expenses are paid). Appx8. First, Section 7.3 provides:

> Forfeited amounts **may be applied to reduce subsequent Employer Matching Contributions**, Discretionary Supplemental Employer Contributions, Qualified Nonelective Contributions, or Qualified Matching Contributions provided for under the Plan, **to defray administrative expenses of the Plan**, to correct errors made in allocating amounts to Participants' Accounts, to restore Participants' Accounts in accordance with this Section, or for any other purpose permitted under IRS rules.

Appx119-120 (Plan § 7.3, "Forfeiture and Repayment") (emphasis added). Section 7.3 authorizes a choice: forfeitures "may" be used for certain enumerated purposes, including as relevant here "to reduce subsequent [employer contributions] provided for under the Plan" or "to defray administrative expenses of the Plan." *Id.*

Although Section 7.3 generally authorizes that choice, it is not made in a vacuum. It is informed and constrained by other aspects of the Plan's design in light of ERISA's duty to follow lawful plan terms. 29 U.S.C. § 1104(a)(D). Here, those terms most notably include Section 14.5, which "mandates" how Plan expenses are paid and who pays them. Appx8. Section 14.5 provides, in relevant part:

**All costs and expenses of administering the Plan and managing the funds**, except for certain administrative costs and expenses receivable or chargeable to the United States Department of Energy (or any successor agency) under the terms of union contracts covering FM&T Participants, **shall be borne by the Participants and paid from their Accounts in the Plan**. . . .

Appx123 (Plan § 14.5, "Plan Expenses") (emphasis added). Unlike Section 7.3, Section 14.5 affords no choice. It mandates that "[a]ll costs and expenses of administering the Plan ... *shall* be borne by the Participants and paid from their Accounts in the Plan," with a single exception for "certain administrative costs and expenses receivable or chargeable to the United States Department of Energy (or any successor agency) under the terms of [certain] union contracts." *Id.* Only one reading gives effect to both Section 7.3 and Section 14.5: while forfeitures "may" be used to "defray administrative expenses of the Plan," including those receivable or chargeable to the federal government, Appx119 (Plan § 7.3), forfeitures *must not* be used to defray the expenses that "shall be borne by the Participants and paid from their Accounts," Appx123 (Plan § 14.5).

In Plaintiff's view, reading Sections 14.5 and 7.3 together somehow means that participants *may* pay only *some* of the costs and expenses

that are not receivable or chargeable to the government. Pl.'s Br. 29-30. "That is not what the plain terms of the Plan state." Appx10. Section 14.5 mandates that participants "*shall*" pay "*[a]ll*" of the "costs and expenses of administering the Plan[,]" except for the subset of "costs and expenses receivable or chargeable to the United States Department of Energy." Appx123 (Plan § 14.5) (emphasis added). So, while Section 7.3 provides that forfeitures "may" be used "to defray administrative expenses," those expenses must be limited to those that participants do not bear. Appx119 (Plan § 7.3). Plaintiff's reading would rewrite Section 14.5 beyond recognition. And it would also require grafting a "new mandate" and "additional benefit" onto the Plan—neither of which ERISA condones. Appx10; *see also Bennett v. Conrail Matched Sav. Plan Admin. Comm.*, 168 F.3d 671, 677 (3d Cir. 1999) ("ERISA does no more than protect the benefits which are due to an employee under a plan.").

Plaintiff insists that he does not seek an additional benefit because Sections 14.5 and 7.3, "when read in conjunction with ERISA's fiduciary duty statutes, promise[] a particular outcome." Pl.'s Br. 31 (quoting *McManus v. Clorox Co.* ("*McManus II*"), 2025 WL 732087, at *4 n.6 (N.D. Cal. Mar. 3, 2025)). This argument does not withstand scrutiny. ERISA's

31

fiduciary-duty provisions include Section 1104(a)(1)(D), which codifies the duty to adhere to the written plan document. 29 U.S.C. § 1104(a)(1)(D). Here, adherence to Plan terms requires heeding Section 14.5's clear mandate that except for the federal government's costs and expenses, participants "shall" bear "all costs and expenses of administering the Plan . . . *from their Accounts in the Plan.*" Appx123 (Plan § 14.5) (emphasis added). Providing Plaintiff's desired outcome would require violating that mandate, and with it, ERISA's duty to follow lawful plan terms. The district court was correct not to condone such an outcome. Appx10-11.

Contrary to Plaintiff's claims otherwise, then, the "[P]lan's design" does not accommodate his already implausible theory; it dooms his case. Pl.'s Br. 28-29. Sections 7.3 and 14.5 do not permit forfeitures to be used for the purpose he claims they should have been used for.[5] And ERISA requires following the lawful terms of the Plan. 29 U.S.C. § 1104(a)(1)(D).

---

[5] Plaintiff relies heavily on four outliers from this recent wave of forfeiture litigation to support his theory: *McManus II*, *Perez-Cruet*, *Rodriguez*, and *Buescher*. *See, e.g.*, Pl.'s Br. 22. Because none of these decisions turn on or involve provisions that required participants to pay plan expenses from their plan accounts, they are inapt comparisons. *See McManus v. Clorox Co. ("McManus I")*, 2024 WL 4944363, at *4 (N.D. Cal. Nov. 1, 2024) ("[f]orfeited amounts will be used, as

Plaintiff does not argue that Sections 7.3 and 14.5 are unlawful or that ERISA obligated Honeywell to write them differently. On the contrary, he recognizes that to succeed on fiduciary-duty and prohibited-transaction claims, he must challenge an action that Honeywell took in a fiduciary capacity. *See, e.g.*, *Lockheed*, 517 U.S. at 892 (explaining that fiduciary-duty and prohibited-transaction claims both require a finding of fiduciary status). And he concedes that Honeywell is "free to redesign the Plan" because plan design is not a fiduciary function; it is a settlor function. Pl.'s Br. 29 n.4.

That concession is appropriate. The Supreme Court has often stressed that nothing in ERISA "mandate[s] what kind of benefits

---

determined by the Committee in its sole discretion, to pay Plan expenses, to reduce contributions to the Plan and to restore forfeitures."); *Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207, at *2 (S.D. Cal. May 24, 2024) (no discussion of plan expense provision), *reconsideration denied* (S.D. Cal. Aug. 12, 2024); *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 944 (N.D. Cal. 2024) (expenses "shall be charged against Participants' Accounts, unless the Employer elects to pay such fees and expenses"); *Buescher v. N. Am. Lighting, Inc.*, 791 F. Supp. 3d 873, 889 n.11 (C.D. Ill. 2025) (observing that "administrative expenses were fully covered by forfeitures before they were otherwise allocated" in certain years). A better comparison would be *Wright*, where, as here, "the only reasonable interpretation" of the plan at issue precluded using forfeitures to pay participants' share of plan expenses. *Wright*, 2025 WL 1683642, at *4.

employers must provide if they choose to have [a retirement] plan." *Lockheed*, 517 U.S. at 887. Rather, "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate [their benefit] plans." *Id.* at 890 (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995)). And "[w]hen employers undertake those actions, they do not act as fiduciaries, but are analogous to the settlors of a trust." *Id.* (citation omitted). The category of non-fiduciary settlor-like decisions therefore includes "a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated." *Hughes Aircraft*, 525 U.S. at 444; *see also Loomis v. Exelon Corp.*, 658 F.3d 667, 671 (7th Cir. 2011) (recognizing that participants cannot challenge an employer's decision not to cover plan expenses, which is "a question of plan design"), *abrogated in part on other grounds by Hughes v. Nw. Univ.*, 595 U.S. 170 (2022).

As the district court recognized, Section 14.5 reflects a decision Honeywell made in a "settlor" capacity when it designed the Plan. Appx10 n.3. That decision requires participants to bear "all" but certain enumerated "costs and expenses of administering the Plan . . . from their

Accounts in the Plan." Appx123 (Plan § 14.5). And as Plaintiff admits, the law is clear: plan design is a quintessential settlor function that falls outside the scope of ERISA's fiduciary duties. Because the Plan's terms do not allow the benefit he seeks, and because he cannot challenge those terms, the district court was correct to dismiss this action.

## III. Even if the Plan's language accommodated Plaintiff's theory, his three claims still fail as a matter of law.

The foregoing points about the Plan's specific language suffice to affirm dismissal of the fiduciary-duty and prohibited-transaction claims. But even if the Plan gave Honeywell discretion to use forfeitures to pay participants' expenses (as in some of the cases Plaintiff cites), these claims would still fail.

The Supreme Court has made clear that the "principal function" of ERISA is to "protect contractually defined benefits." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013) (citation omitted). Before ERISA, Congress was concerned that employees would sometimes be "deprived of anticipated benefits." 29 U.S.C. § 1001(a). So it decided that once "employers have guaranteed them certain benefits," employees should "not be left empty-handed." *Lockheed*, 517 U.S. at 887. By the same token,

35

ERISA's scheme of rights and obligations "is built around reliance on the face of written plan documents." *Curtiss-Wright*, 514 U.S. at 83.

Consistent with these principles, this Court has emphasized that a fiduciary "who strictly adheres to the lawful terms of a [retirement] plan" does not violate the duties imposed by ERISA. *Hlinka v. Bethlehem Steel Corp.*, 863 F.2d 279, 286 (3d Cir. 1988) (citation omitted). And while ERISA "requires that fiduciaries comply with [a] plan as written unless it is inconsistent with ERISA," the statute "does no more than protect the benefits which are due to an employee under a plan." *Bennett*, 168 F.3d at 679, 677. In particular, ERISA "creates no exclusive duty of maximizing pecuniary benefits"; rather, "the fiduciaries' duties are found largely in the terms of the plan itself." *Foltz v. U.S. News & World Rep., Inc.*, 865 F.2d 364, 373 (D.C. Cir. 1989) (citing *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 511 (1981), and *Edwards v. Wilkes-Barre Pub. Co. Pension Tr.*, 757 F.2d 52, 56-57 (3d Cir. 1985)); *see also Cooke v. Lynn Sand & Stone Co.*, 70 F.3d 201, 205 (1st Cir. 1995); *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004); *Rozo v. Principal Life Ins. Co.*, 48 F.4th 589, 598 (8th Cir. 2022).

36

Here, Plaintiff does not (and could not) dispute that the Plan's terms are "consistent with" ERISA. 29 U.S.C. § 1104(a)(1)(D). Nor does he identify any ERISA provision that prohibits using forfeitures as the Plan expressly authorizes. Yet he wants to rewrite the Plan so that Honeywell is required to apply forfeitures to provide an additional benefit to participants. The only scenario in which Plaintiff would allow forfeitures to be applied toward contributions is the rare scenario in which Honeywell is at risk of being financially unable to make required contributions. Pl.'s Br. 7. The district court rightly rejected this argument as incompatible with settled law. Appx10-11.

## A.    Plaintiff fails to adequately allege a breach of the duty of loyalty.

Under ERISA's duty of loyalty, fiduciaries must discharge their duties solely in the interest of participants and beneficiaries and for the exclusive purpose of providing benefits to them and defraying reasonable expenses. 29 U.S.C. § 1104(a)(1)(A). Although this standard is "quite rigorous," "a plan fiduciary does not violate ERISA merely by being associated . . . with the employer" who sponsors a plan. *McMahon v. McDowell*, 794 F.2d 100, 110 (3d Cir. 1986). Nor does Section 1104 obligate fiduciaries to maximize participants' pecuniary benefits. *See Foltz*, 865

37

F.2d at 373. Again, Section 1104(a)(1)(A) "does no more than protect the benefits which are due to [a participant] under a plan." *Bennett*, 168 F.3d at 677.

Here, there is no dispute that Honeywell's use of forfeitures was consistent with the Plan's terms. Nor is there any dispute that forfeitures used as employer contributions continue to be devoted exclusively to providing benefits to participants and beneficiaries. They do not leave the Plan or satisfy any obligation Honeywell has outside the Plan. Accordingly, Plaintiff failed to state a claim for breach of the duty of loyalty. The duty of loyalty instructs fiduciaries to discharge their duties "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i). Honeywell did that by using forfeitures to fund participants' benefits.

In amending his complaint, Plaintiff dropped a claim asserting a breach of ERISA's anti-inurement provision, 29 U.S.C. § 1103(c)(1). This decision all but concedes that he cannot state a disloyalty claim. The anti-inurement provision mirrors the duty-of-loyalty provision, stating in relevant part that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of *providing*

*benefits to participants in the plan . . .* and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1) (emphasis added). This "provision demands only that plan assets be held for supplying benefits to plan participants." *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 22 (2004); *see also Hughes Aircraft*, 525 U.S. at 442 (Section 1103(c)(1) "focuses exclusively on whether fund assets were used to pay pension benefits to plan participants[.]"). If a plan exclusively uses assets in compliance with the anti-inurement provision—not for the benefit of the employer, but solely to provide benefits to participants—there can be no breach of the duty of loyalty.

Plaintiff tries to sidestep the consequences of his concession with a newly unearthed cite to *Struble v. N.J. Brewery Employees' Welfare Tr. Fund*, 732 F.2d 325 (3d Cir. 1984). *See* Pl.'s Br. 18-21. If *Struble* was as "strikingly similar" to this case as Plaintiff claims, he presumably would have brought it to the district court's attention. *Id.* at 20. But he did not do so, *see* SAppx10-17, and it is not similar.

In *Struble*, plaintiffs—welfare benefit plan participants—alleged that plan trustees violated ERISA by failing to collect fixed sums that employers had agreed to pay in a collective bargaining agreement to

cover participants' insurance premiums. *See Struble*, 732 F.2d at 331. The terms of the benefit plan required each employer to "contribute the amount set forth in its then-current collective bargaining agreement." *Id.* at 328. After an insurer refunded excess premiums to the plan, the trustees voted both to reduce the employers' contributions and "credit" them with the refunds. *Id.* at 329. This credit, however, was more than the "offset [in] future employer contributions" that Plaintiff suggests. Pl.'s Br. 19. In fact, the trustees decided "to return the surplus to the [e]mployers." *Struble*, 732 F.2d at 331. In other words, the trustees apparently transferred assets from the plan to the employers rather than using them to pay participant benefits. This Court reversed summary judgment for the trustees and remanded for further development of the record (which "contain[ed] almost no evidence" revealing why the trustees voted the way they did). *Id.* at 335.

*Struble* does not change the analysis here. The trustees in that case voted contrary to a plan provision that prescribed specified contributions with no apparent authorization to apply surplus contributions as a refund from the plan to the employer; here, the Plan expressly authorizes applying forfeitures to pay participant benefits within the Plan, in lieu of

additional employer contributions. *Compare id.* at 328-29, *with* Appx119 (Plan § 7.3). That distinction is dispositive because, as this Court has since explained, a decision to adhere to lawful plan terms is no ground for a breach-of-fiduciary-duty claim under Section 1104. *Hlinka*, 863 F.2d at 286.[6]

Plaintiff argues, however, that Honeywell breached its duty of loyalty simply because deciding to apply forfeitures toward employer contributions promotes "the [Company's] interests" instead of "[participants'] interests." Pl.'s Br. 20 (quoting *Struble*, 732 F.2d at 334). But *Struble* did not adopt so sweeping a rule and, as noted, involved materially different facts. Nor is there any limiting principle to Plaintiff's argument. By his logic, fiduciaries should always give participants more money, even if the participants are not entitled to it under the plan terms. And even just as to forfeitures specifically, Plaintiff's view would always deem it "disloyal" not to put forfeitures toward Plan expenses, unless the employer is at risk of "defaulting" on its contributions, because using the

---

[6]  That Honeywell complied with the Plan also distinguishes this case from *Rodriguez*, where plaintiff "plausibly alleged that the Plan did not authorize the specific decisions made by [the defendant] with respect to the use of forfeited Matching Contributions." *Rodriguez*, 744 F. Supp. 3d at 944.

forfeitures to pay expenses automatically saves participants money. For employers like Honeywell, the result would effectively be a categorical obligation to use forfeitures to offset expenses even though ERISA does not obligate employers to pay for plan expenses. *See Loomis*, 658 F.3d at 671.

Plaintiff criticizes the district court for finding his categorical rule implausibly broad. Pl.'s Br. 26-29. But there was nothing improper about the district court's analysis. Nor, as Plaintiff asserts, did the court apply an erroneous legal standard. It is blackletter law that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Hughes*, 595 U.S. at 173 (noting that ERISA demands a "context-specific inquiry"). Plaintiff's legal theory "effectively imposes a new mandate": if a plan affords a choice between using forfeitures to reduce employer contributions or defray participants' administrative expenses, a fiduciary must always choose the latter. Appx10. The district court was right to reject this unwarranted expansion of ERISA's fiduciary duties.

Plaintiff's overarching theory—that using forfeitures to pay benefits in lieu of additional employer contributions is not for employees' exclusive benefit—is also at odds with settled tax law. Much like ERISA, the Internal Revenue Code requires that a pension plan's qualified trust be used "for the exclusive benefit of [the] employees or their beneficiaries." 26 U.S.C. § 401(a). If applying forfeitures toward employer contributions were not "in the interest of participants or beneficiaries," as Plaintiff supposes is true for 29 U.S.C. § 1104(a)(1)(A), neither would it be "for [their] exclusive benefit" under 26 U.S.C. § 401(a). But as discussed above in Section I, sixty years of unbroken tax law says otherwise.

Finally, even if Plaintiff's theory were to succeed, the ultimate result is unlikely to be that participants get "free" pension plans without having to bear any administrative expenses. The likelier result will be that employers are less willing to continue making current levels of matching contributions, or that employers rewrite plans to prohibit using forfeitures to pay administrative expenses. Neither result serves any goal of ERISA. For this reason, too, the district court's dismissal of Plaintiff's duty of loyalty claim was appropriate.

43

## B. Plaintiff fails to adequately allege a breach of the duty of prudence.

Plaintiff's duty of prudence claim shares many of the same problems as his duty of loyalty claim. The duty of prudence is a process-based duty, and courts evaluate allegations of imprudence based on "a fiduciary's conduct in arriving at [a] decision, not on its results." *In re Unisys Sav. Plan Litig.*, 173 F.3d 145, 153 (3d Cir. 1999) (citation omitted). The question is whether a fiduciary, at the time they engaged in the challenged conduct, "employed the appropriate methods to investigate the merits of [the potential options]." *Id.* And "[b]ecause the content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." *Dudenhoeffer*, 573 U.S. at 425 (quoting 29 U.S.C. § 1104(a)(1)(B)).

Yet here, too, Plaintiff advocates a rule that would make it categorically plausible that a fiduciary acted imprudently—and violated ERISA—merely by choosing to use forfeitures to reduce employer contributions, as plan terms permit, rather than pay expenses for participants. Any plaintiff in such circumstances could allege, as Plaintiff does, that the fiduciary had a conflict of interest, failed to adequately and impartially investigate the supposedly superior option of paying expenses, and

44

failed to delegate the decision to an "independent nonconflicted decisionmaker." Pl.'s Br. 25. If these speculative and boilerplate allegations sufficed, the result would be the same categorical rule as his loyalty claim: "forfeitures must always be used to pay Plan participants' administrative expenses before they can be allocated to reducing a company's matching contributions." Appx11-12 (quoting *Hutchins II*, 767 F. Supp. 3d at 927). "Such a categorical rule is inconsistent with the context-specific inquiry that ERISA requires." *Hughes*, 595 U.S. at 173. It also conflicts with the principle that ERISA does not obligate fiduciaries to increase benefits not promised by their plans. *Foltz*, 865 F.2d at 373; *see also Mator v. Wesco Distrib., Inc.*, 102 F.4th 172, 185 (3d Cir. 2024) ("[R]easonable fiduciaries need not prioritize cost minimization above all else[.]").

ERISA's instruction to measure fiduciary conduct based on "the circumstances then prevailing" also poses a substantial problem for Plaintiff's theory for an additional reason. Here, those "circumstances" include decades of legal support for Honeywell's actions, including the regulations, House Report, and guidance discussed in Section I, as well as the Plan document itself. *See McWashington*, 2025 WL 1736765, at *14

45

("In light of the almost 40-year-old public document referenced by the IRS, plaintiffs must, to state a plausible claim of imprudence and/or disloyalty, plead something more than an ordinary use of forfeited funds to pay future employer contributions, or in other words, behavior that is not consistent with the practices of perhaps all 401(k) plan fiduciaries."). And in the case especially, the relevant "circumstances" include the Plan terms, including Section 14.5, which requires that participants pay their share of costs and expenses from their own Plan accounts. Appx123 (Plan § 14.5). Prudence required following those Plan terms, not violating them. Yet despite all these circumstances and the context-sensitive nature of the responsibility, Plaintiff's theory permits only one choice for Honeywell: use unallocated forfeitures to pay Plan costs for participants. The district court properly rejected that theory.

## C.    Plaintiff fails to adequately allege a prohibited transaction.

Plaintiff's last claim is that Honeywell's decision to use forfeitures to reduce contributions is a prohibited transaction under 29 U.S.C. § 1106(b)(1). Although Plaintiff at times seems to concede that Honeywell could revise its Plan terms to make such use of forfeitures lawful, his prohibited-transaction claim implies otherwise. On his reading of

46

Section 1106(b)(1), it would always be "self-dealing" to use forfeitures to reduce contributions.  *See* Pl.'s Br. 35-36.

In all events, Plaintiff's claim fails because, as the district court concluded, it is not premised on any transaction between the Plan and Honeywell or anyone else.  When Honeywell applies forfeitures toward contributions, they are used to pay Plan benefits just like any contribution.  But the Supreme Court has explained that "the payment of benefits is . . . not a 'transaction' in the sense that Congress used that term." *Lockheed*, 517 U.S. at 892-93.  So likewise here, as the district court concluded, using forfeitures to fund other participants' benefits is not a transaction prohibited by Section 1106.  Appx12-13; Appx25-27.

Plaintiff says *Lockheed* is irrelevant to his Section 1106(b)(1) claim.  Pl.'s Br. 41.  He overlooks, however, that while the Supreme Court was specifically construing Section 1106(a)(1)(D) in *Lockheed*, it drew support for its conclusion from Section 1106 as a whole, which the Court characterized as "prohibit[ing] fiduciaries from involving the plan and its assets in certain kinds of business deals" and "bar[ring] categorically a *transaction* that is likely to injure the pension plan."  517 U.S. at 888 (emphasis added) (citation and brackets omitted); *see also Wright*, 360 F.3d at 1100-

47

01 (applying *Lockheed*'s transaction requirement to claims under Section 1106(a) and Section 1106(b)).[7]

Plaintiff argues that the statutory text does not support a requirement to plead a transaction because Subsection (b)(1) does not use the word "transaction" and instead uses the phrase "deal with the assets of the plan." 29 U.S.C. § 1106(b)(1); Pl.'s Br. 36-37. This argument draws from a dictionary definition of "deal with," which in certain contexts can refer broadly to "tak[ing] action with regard to someone or something." Pl.'s Br. 35-36 (internal citations omitted). But when ERISA was enacted (as today), the phrase "deal with" had multiple other meanings that

---

[7] Plaintiff cites three pre-*Lockheed* decisions, but even these do not support his reading of Section 1106(b)(1). Pl.'s Br. 39. In *Leigh* and *Lowen*, the Seventh and Second Circuits construed Section 1106(b)(1) to require a transaction. *See Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987) (describing Sections 1106(b)(3) *and* (b)(1) as "protect[ing] beneficiaries by prohibiting transactions tainted by a conflict of interest and thus highly susceptible to self-dealing"); *Leigh v. Engle*, 727 F.2d 113, 126 (7th Cir. 1984) ("The broad provisions of section 406(a)(1)(D) *and* (b)(1) require courts to look carefully at the transaction[.]" (emphasis added)). And in *Friend*, the Ninth Circuit merely noted a necessary condition for a violation of Section 1106(b)(1), not a sufficient one: "Whether a trustee is also an employer or a creditor, it *only* violates section 1106(b) when it uses the assets of a plan for its own benefit." *Friend v. Sanwa Bank Cal.*, 35 F.3d 466, 470 (9th Cir. 1994) (emphasis added). Plaintiff's quotation misleadingly omits the "only." *See* Pl.'s Br. 39.

implied a transaction and fit much better within the context of Section 1106. *See* WEBSTER'S NEW WORLD DICTIONARY (college ed. 1968) (listing, as one definition of to "deal," "to do business; trade (*with* or *in*)"); BLACK'S LAW DICTIONARY 487 (rev. 4th ed. 1968) (defining to "deal" as "[t]o traffic; to transact business; to trade"); MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/deal%20with (listing, as one definition of to "deal with," "to make business agreements with (someone)").

To understand the meaning of the phrase "deal with" in Section 1106(b)(1), the Court should consider Section 1106 as a whole, as the Supreme Court did in *Lockheed*. "Under the familiar interpretive canon *noscitur a sociis*, 'a word is known by the company it keeps.'" *Dubin v. United States*, 599 U.S. 110, 124 (2023) (citation omitted). "[T]his canon is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress." *Id.* at 124-25 (citation omitted). Here, reading the provision as a whole reveals that Section 1106 lists a series of "transaction[s]" and "business deals" that are "likely to injure the pension plan." *Lockheed*, 517 U.S. at 888 (citation omitted).

49

Even more recently, the Supreme Court highlighted that a helpful textual clue when construing Section 1106 is its heading: "Section 1106's heading is plain: 'Prohibited transactions.'" *Cunningham v. Cornell Univ.*, 604 U.S. 693, 704 (2025). Even if the words "deal with" might be susceptible to several meanings when read in isolation, the section's "title is a useful clue." *Dubin*, 599 U.S. at 121 (citation omitted). Another useful clue is the subsection title of Section 1106(b): "Transactions between plan and fiduciary." These headings, along with the rest of Section 1106, reinforce that Section 1106(b)(1) is identifying a prohibited class of transactions. Plaintiff's contrary reading of this provision is simply not credible when it appears in a statutory section and subsection that are exclusively devoted to categorically prohibited transactions. As the Supreme Court reiterated in *Cunningham*: "Section 1106 . . . categorically bar[s] certain transactions deemed 'likely to injure the pension plan.'" 604 U.S. at 697 (citation omitted).

Plaintiff cites two cases finding Section 1106(b)(1) violations where the defendant "misappropriated" plan assets. *See* Pl.'s Br. 39-40 (citing *Guyan Int'l, Inc. v. Pro. Benefits Adm'rs, Inc.*, 689 F.3d 793, 798-99 (6th Cir. 2012), and *Patelco Credit Union v. Sahni*, 262 F.3d 897, 911 (9th Cir.

50

2001)). But a wrongful transfer of property from a plan to someone else is a transaction in a way that keeping assets within a plan to pay benefits is not. *See Guyan*, 689 F.3d at 796-97 (defendant "commingled" plan funds with its own assets and "use[d] [p]lan funds for its own purposes" instead of paying medical claims); *Patelco*, 262 F.3d at 911 (defendant determined and collected his own fees from plan funds and "received, deposited, and . . . failed to account for two benefits checks" that were assets of the plan). Unlike in *Guyan* and *Patelco*, there is no allegation here that any forfeited assets were transferred out of the Plan.

Nor is Plaintiff's reading supported by the presumption against surplusage. *Contra* Pl.'s Br. 37-38. Plaintiff says that if "deal with" referred to transaction deals, there would be no reason for Congress to include the word "transaction" in Section 1106(b)(3). Not so. In that provision, Congress prohibited a fiduciary from "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(3). There, the word "transaction" is necessary to make clear which sorts of transactions are at issue—those "involving the assets

51

of the plan." If Congress had just said "any party dealing with such plan," the provision might extend to dealings beyond those Congress intended.

Plaintiff also argues that he alleged a transaction like the transaction prohibited in Section 1106(a)(1)(B): an "extension of credit between the plan and a party in interest." *See* Pl.'s Br. 42-44. This argument has two problems. First, it is not preserved. Plaintiff did not mention Section 1106(a)(1) in his amended complaint, let alone Section 1106(a)(1)(B) specifically; he chose to limit his prohibited-transaction claim to Section 1106(b)(1).[8] Appx77-78 (Am. Compl. ¶¶ 56-60). And in opposing Honeywell's motion to dismiss the amended complaint, he never argued that his prohibited-transaction claim involved an extension-of-credit transaction or any other transaction. He merely argued that such a transaction was unnecessary. *See* SAppx22-26. Having decided not to raise this argument below, he has waived his ability to raise it on appeal. *See Jacobs Project Mgmt. Co. v. U.S. Dep't of Interior*, 64 F.4th 123, 130 (3d Cir. 2023)

---

[8]    Moreover, even when Plaintiff *did* allege a claim under Section 1106(a)(1) in his original complaint, that claim was limited to a transaction under either Section 1106(a)(1)(A) or Section 1106(a)(1)(D). *See* Appx40 (Compl. ¶¶ 48, 50).

(a "sophisticated litigant" who "intentionally cho[oses] to make just one argument" cannot raise a new argument on appeal).

The second problem, in all events, is that the argument is meritless. Plaintiff admits, as he must, that using forfeitures to reduce contributions satisfies Honeywell's obligation to make matching contributions to the Plan. Pl.'s Br. 43. The Plan expressly permits the use of forfeitures to "reduce subsequent Employer Matching Contributions . . . provided for under the plan." Appx119 (Plan § 7.3). Because this conduct *satisfies* Honeywell's contributory obligations, there is no basis to characterize it as an extension of credit for unsatisfied obligations. This newly raised theory cannot salvage Plaintiff's claim.

## CONCLUSION

For all these reasons, the Court should affirm the judgment of the district court.

Dated:  December 24, 2025

MICHAEL E. KENNEALLY
   D.C. Bar No. 1025767
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C.  20004
(202) 739-3000

STEPHANIE R. REISS
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre,
Thirty-Second Floor
Pittsburgh, PA  15219
(412) 560-3300

Respectfully submitted,

s/ Michael E. Kenneally
JEREMY P. BLUMENFELD
COLLEEN A. GALLAGHER
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA  19103
(215) 963-5000

SAMUEL D. BLOCK
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606
(312) 324-1000

*Counsel for Honeywell International Inc.*

54

## COMBINED CERTIFICATES OF COMPLIANCE

In accordance with Local Appellate Rules 28.3(d) and 46.1(e), I certify that all attorneys whose names appear on this brief are members in good standing of the bar of this Court or have filed an application for admission.

In accordance with Local Appellate Rule 31.1(c), I certify that the texts of the electronic brief and paper copies are identical and that Microsoft Defender Offline scanned the file and did not detect a virus.

In accordance with Federal Rule of Appellate Procedure 32(g)(1), I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,611 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1), according to the word count of Microsoft Word 365. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in Century Schoolbook 14-point font, a proportionally spaced typeface.

Dated:  December 24, 2025          s/ Michael E. Kenneally
                                   MICHAEL E. KENNEALLY

55